Judges NEWMAN and CALABRESI file separate concurring opinions.
WALKER, Circuit Judge:
The United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust (the “Trust”) sued in the Bankruptcy Court for the Southern District of New York (Francis G. Conrad, Bankruptcy Judge) seeking a declaratory judgment to establish the Trust’s rights under various insurance contracts. The bankruptcy court held that the action was within its core jurisdiction and denied the defendants’ motion to compel arbitration of the proceedings. The District Court for the Southern District of New York (Sidney H. Stein, District Judge), reversed and held that the insurance contract disputes were not core proceedings. After ordering arbitration to go forward, the district court certified its order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We now reverse and remand.
BACKGROUND
The facts pertinent to this appeal are fully set forth in the extensive opinions of the bankruptcy court, see United States *635 Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass’n, 169 B.R. 804, 809-11 (Bankr.S.D.N.Y.1994) (“U.S. Lines I”), and the district court, see United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass’n, 220 B.R. 5, 7-8 (S.D.N.Y.1997) (“U.S. Lines II”). We assume familiarity with both, and will only summarize the pertinent facts here. On November 24,1986, United States Lines, Inc. and United States Lines (S.A.) Inc., as debtors, filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 et seq. The Trust is their successor-in-interest pursuant to a plan of reorganization that was confirmed by the bankruptcy court on May 16, 1989.
Among the creditors are some 12,000 employees who have filed more than 18,000 claims, most of which are for asbestos-related injuries sustained while sailing on different ships in debtors’ fleet over four decades. Many additional claims are expected to mature in the future. The Trust asserts that these claims are covered by several Protection & Indemnity insurance policies (the “P & I policies”) issued by four domestic and four foreign mutual insurance clubs (“the Clubs”). Generally, a single club insured the debtors’ entire fleet for a particular year, but there were exceptions when certain ships where insured independently of fleet coverage by another club or under a different policy. All of the P & I policies were issued before the debtors petitioned for bankruptcy relief.
The proceeds of the P & I policies are the only funds potentially available to cover the above employees’ personal injury claims. At the heart of each of the P & I policies is a pay-first provision by which the insurers’ liability is not triggered until the insured pays the claim of the personal injury victim. The deductibles for each accident or occurrence vary among the different policies, ranging from $250 to $100,000.
On December 8, 1992, the Bankruptcy Court entered a stipulation of conditional settlement between the Trust and an initial group of 106 claimants, and on January 5, 1993, the Trust began this action as an adversarial proceeding in bankruptcy, pursuant to 28 U.S.C. § 2201, seeking a declaratory judgment of the parties’ respective rights under the various P & I policies. Nine of the ten counts in the complaint seek a declaration from the court of the Clubs’ contractual obligations under the P & I policies in light of the stipulation of conditional settlement. The tenth claim seeks punitive damages for creating an “insurance maze.”
The bankruptcy court held, inter alia, that the Trust’s declaratory judgment action was “core,” U.S. Lines I, 169 B.R. at 821, and thus could be tried to binding judgment in the bankruptcy court, and that the bankruptcy court had discretion to deny the motion to compel arbitration filed by the four foreign Clubs, see id. at 825. The district court, exercising appellate jurisdiction, reversed both determinations and, on November 26, 1997, entered an order remanding to the bankruptcy court for further proceedings. See U.S. Lines II, 220 B.R. at 11, 13. On March 4, 1998, the district court entered an order certifying its November 26, 1997 order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and we accepted the appeal.
DISCUSSION
I. Jurisdiction
At the outset, the Clubs argue that we only have jurisdiction to hear the question identified as controlling by the district court, namely its “determination that the adversary action in this case is not a ‘core’ proceeding pursuant to 28 U.S.C. § 157(h),” see United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass’n., No. 85-civ. 3175 (S.D.N.Y. March 4, 1998), and not whether arbitration was properly ordered. We disagree.
The Supreme Court has held that under 28 U.S.C. § 1292(b) appellate jurisdiction, “the appellate court may address any issue *636 fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court.” Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 205, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996) (citation and quotation marks omitted); Isra Fruit Ltd. v. Agrexco Agric. Export Co., 804 F.2d 24, 25 (2d Cir.1986). Because the district court’s order determined whether the Trust’s action was core and whether the bankruptcy court has discretion to stay arbitration, both issues are before us.
Appellees also argue, in the alternative, that pursuant to 9 U.S.C. § 16(b) arbitrability may not be considered on this interlocutory appeal, because it is not independent of the core/non-core issue. That argument misconstrues the law. Appel-lees are correct that the arbitrability issue is “embedded” in the lawsuit seeking a declaration of coverage. The limited exception to the prohibition against interlocutory appeals of an order to arbitrate where the arbitrability issue is “independent” and not “embedded” is therefore unavailing. See Ermenegildo Zegna Corp. v. Zegna, S.p.A, 133 F.3d 177, 181 (2d Cir.1998); Filanto, S.p.A. v. Chilewich Int’l Corp., 984 F.2d 58, 60 (2d Cir.1993). But the issue may be properly considered by us for another reason. Section 16(b) only prohibits arbitrability from being considered in most interlocutory appeals “[e]xcept as otherwise provided in section 1292(b) of title 28.” 9 U.S.C. § 16(b). This appeal is before us by virtue of 28 U.S.C. § 1292(b), and therefore the Arbitration Act does not prohibit us from determining the arbitration issue, even though it is not independent of the core/ non-core issue.
We therefore have jurisdiction to determine both whether the proceedings are “core” and whether the bankruptcy court has discretion to enjoin arbitration. We will consider each in turn.
II. Whether the Declaratory Judgment Action is “Core”
The Bankruptcy Code divides claims in bankruptcy proceedings into two principal categories: “core” and “non-core.” See 28 U.S.C. § 157. “Bankruptcy judges have the authority to ‘hear and determine all ... core proceedings arising under title 11 ... and may enter appropriate orders and judgments, subject to review under section 158 of [title 28.]’ ” S.G. Phillips Constructors, Inc. v. City of Burlington (In re S.G. Phillips Constructors, Inc.), 45 F.3d 702, 704 (2d Cir.1995) (quoting 28 U.S.C. § 157(b)(1)). With respect to non-core claims, unless the parties otherwise agree, the bankruptcy court can only recommend findings of fact and conclusions of law to the district court. See id. In this case the bankruptcy court held that the Trust’s declaratory judgment action was a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the district court held that it was non-core. We review the latter ruling de novo. See Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.), 896 F.2d 1384, 1388 (2d Cir.1990). Unlike the district court, we conclude that the bankruptcy court has core jurisdiction over the proceedings.
The origin of the core/non-core distinction is found in Northern Pipeline Construction Co. v. Marathon Pipe Line Co., 458 U.S. 50,102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), in which the Supreme Court struck down provisions of the 1978 Bankruptcy Act that vested authority in Article I bankruptcy courts to hear cases that, absent the parties’ consent, constitutionally could only be heard by Article III courts — so-called “non-core” proceedings. The four-member plurality emphasized that “the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages.” Marathon, 458 U.S. at 71, 102 S.Ct. 2858. We have held that *637 “core proceedings” should be given a broad interpretation that is “close to or congruent with constitutional limits” as set forth in Marathon, and that Marathon is to be construed narrowly. Resolution Trust Corp. v. Best Prods. Co., Inc. (In re Best Prods. Co.), 68 F.3d 26, 31 (2d Cir. 1995) (quoting Arnold Print Works,.Inc. v. Apkin (In re Arnold Print Works, Inc.), 815 F.2d 165, 168 (1st Cir.1987)).
The principal holding of Marathon is that Congress has minimal authority to control the manner in which “a right created by state law, a right independent of and antecedent to the reorganization petition that conferred jurisdiction upon the Bankruptcy Court” may be adjudicated. Marathon, 458 U.S. at 84, 102 S.Ct. 2858; see id. at 90, 102 S.Ct. 2858 (Rehnquist, J., concurring) (“the lawsuit ... seeks damages for breach of contract, misrepresentation, and other counts which are the stuff of the traditional actions at common law”); see also Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 584, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985) (“[Marathon] establishes only that Congress may not vest in a non-Article III court the power to adjudicate, render final judgment, and issue binding orders in a traditional contract action arising under state law, without consent of the litigants, and subject only to ordinary appellate review.”).
Therefore, under Marathon, whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization. The latter inquiry hinges on “the nature of the proceeding.” In re S.G. Phillips Constructors, Inc., 45 F.3d at 707. Proceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, see, e.g., id. at 706 (claim allowance), or (2) the proceedings directly affect a core bankruptcy function, see, e.g., In re Best Prods. Co., 68 F.3d at 31 (contractual subordination agreements affecting priority of claims). Core bankruptcy functions of particular import to the instant proceedings include “[f]ixing the order of priority of creditor claims against a debtor,” id., “ ‘placing] the property of the bankrupt, wherever found, under the control of the court, for equal distribution among the creditors,’ ” MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 837 F.2d 89, 91 (2d Cir.1988) (quoting Straton v. New, 283 U.S. 318, 320-21, 51 S.Ct. 465, 75 L.Ed. 1060 (1931)), and “administering] all property in the bankrupt’s possession,” Straton, 283 U.S. at 321, 51 S.Ct. 465.
We now turn to the question of whether the underlying insurance contract claims are core. Some arguments for deeming the contract claims core are unavailing. While “[t]he debtors’ rights under its insurance policies are property of a debtor’s estate,” St. Clare’s Hosp. & Health Ctr. v. Insurance Co. of N. Am. (In re St. Clare’s Hosp. & Health Ctr.), 934 F.2d 15, 18 (2d Cir.1991), the contract claims are not rendered core simply because they involve property of the estate. “The issue [in the contract claims] is the scope of the insurance policies, an issue of contractual interpretation, not their ownership.” In re United States Brass Corp., 110 F.3d 1261, 1268 (7th Cir.1997). A general rule that such proceedings are core because they involve property of the estate would “create[] an exception to Marathon that would swallow the rule.” Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1102 (2d Cir.1993).
The Trust argues that the proceedings are core because not all of the insurance claims have been fully developed pre-petition. However, the critical question in determining whether a contractual dispute is core by virtue of timing is not whether the cause of action accrued post-petition, but whether the contract was formed post-petition. The bankruptcy court has core jurisdiction over claims arising from a contract formed post-petition under *638 § 157(b)(2)(A). See Ben Cooper, Inc. v. Insurance Co. (In re Ben Cooper, Inc.), 896 F.2d 1394, 1399-1400 (2d Cir.), vacated on other grounds, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), opinion reinstated, 924 F.2d 36 (2d Cir.1991). But a dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition. In Orion, for example, we held to be non-core Orion’s cause of action for anticipatory breach of a pre-petition contract that sought declaratory and other relief from Showtime even though the event that triggered Orion’s claim occurred post-petition. See In re Orion Pictures Corp., 4 F.3d at 1097, 1102; see also McMahon v. Providence Capitol Enters., Inc. (In re McMahon), 222 B.R. 205, 208 (S.D.N.Y.1998).[1]
Notwithstanding that the Trust’s claims are upon pre-petition contracts, we conclude that the impact these contracts have on other core bankruptcy functions nevertheless render the proceedings core. Indemnity insurance contracts, particularly where the debtor is faced with substantial liability claims within the coverage of the policy, “may well be ... ‘the most important asset of [i.e., the debtor’s] estate,’ ” Dicola v. American S.S. Owners Mut. Protection & Indem. Ass’n (In re Prudential Lines Inc.), 170 B.R. 222, 229 (S.D.N.Y.1994) (quoting A.H. Robins Co., Inc. v. Piccinin, 788 F.2d 994, 1001 (4th Cir.1986) (alteration in original)). As such, resolving disputes relating to major insurance contracts are bound to have a significant impact on the administration of the estate. In Orion, we concluded that where the insurance proceeds would only augment the assets of the estate for general distribution, the effect on the administration of the estate was insufficient to render the proceedings core. See Orion, 4 F.3d at 1102 ($77 million potential debt which admittedly would ease administration and liquidation of the estate still encompassed by Marathon prohibition). Resolving the disputes over the P & I policies here has a much more direct impact on the core administrative functions of the bankruptcy court.
The insurance proceeds are almost entirely earmarked for paying the personal injury claimants and represent the only potential source of cash available to that group of creditors. However, under the pay-first provisions of the P & I policies, those proceeds will not be made available until the Trust has paid the claims. Debtors’ insolvency makes that threshold requirement difficult to meet; as is typical, their lack of assets leaves them unable to pay all of the claims first and seek indemnification later. See Dicola v. American 5.5. Owners Mut. Protection & Indem. Ass’n (In re Prudential Lines Inc.), 158 F.3d 65, 75 (2d Cir.1998). Payment arrangements that may be possible when the insured is solvent, may not be available when the insured is insolvent. See id. at 73-76. Bankrupt debtors are limited in their ability to obtain new loans which otherwise could be used to create funds to satisfy the pay-first requirement, see id. at 75, and promissory notes issued by an insolvent insured to a claimant are not considered payment that triggers an obligation to indemnify, see id. at 74. The insolvent insured is therefore often forced to satisfy the pay-first requirement by means of complex, creative payment schemes. See, e.g., Liman v. American 5.5. Owners Mut. Protection & Indem. Ass’n, 299 F.Supp. 106, 108 (S.D.N.Y.), aff'd, 417 F.2d 627 (2d Cir.1969) (per curiam ) (utilizing a payoui/loan-back revolving cash procedure). In addition to the difficulties involved in paying the claims, the Trust faces a significant risk that the payment scheme ultimately employed will be deemed not to satisfy the pay-first requirement. See In re Prudential Lines Inc., 158 F.3d at 73 (limiting the permissibility of Liman type arrangements).
*639 If the Trust were initially to pay the claimants with assets earmarked for other creditors only to be informed afterwards that the payments did not trigger the Clubs’ indemnification obligation, the result would be an inequitable distribution among the creditors. Therefore, in order to effectuate an equitable distribution of the bankruptcy estate, a comprehensive declaratory judgment is required to determine (1) whether a chosen payment plan will trigger the indemnification obligation and (2) the amounts payable under the insurance contracts. Thus, the declaratory proceedings brought by the Trust in this case directly affect the bankruptcy court’s core administrative function of asset allocation among creditors, and for that reason they are core.
The district court ruled that it did not have pendent appellate jurisdiction to determine whether additional claims for punitive damages and attorneys’ fees were core. The district court’s decision not to exercise pendent appellate jurisdiction is not before us and we therefore do not reach the question whether the punitive damages claims and attorneys’ fees, when properly considered, are core or non-core.
III. Annulment of the Arbitration Clauses
The parties have entered into valid agreements to arbitrate their contract disputes, some of which call for international arbitration. Arbitration is favored in our judicial system, see Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 220-21, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985); Moses H. Cone Mem’l Hosp. v. Mercury Contr. Corp., 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and the Arbitration Act mandates enforcement of valid arbitration agreements, see Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). The arbitration preference is particularly strong for international arbitration agreements. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 629, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (“[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require enforce[ment of] the parties’ [arbitration] agreement, even assuming that a contrary result would be forthcoming in a domestic context.”). The Clubs therefore argue that the bankruptcy court cannot enjoin arbitration of the proceedings. We disagree.
“Like any statutory directive, the Arbitration Act’s mandate may be overridden by a contrary congressional command.” Shearson/Am. Express, 482 U.S. at 226, 107 S.Ct. 2332. That is true even where arbitration is sought subject to an international arbitration agreement. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517 (the “New York Convention”), “which requires the recognition of agreements to arbitrate that involve ‘subject matter capable of settlement by arbitration,’ contemplates exceptions to arbitrability grounded in domestic law.” Mitsubishi, 473 U.S. at 639 n. 21, 105 S.Ct. 3346. “[I]f Congress did intend to limit or prohibit waiver of a judicial forum for a particular claim, such an intent will be deducible from [the statute’s] text or legislative history, or from an inherent conflict between arbitration and the statute’s underlying purposes.” Shearson/Am. Express, 482 U.S. at 227, 107 S.Ct. 2332 (internal quotation marks and citations omitted); see Oldroyd v. Elmira Sav. Bank FSB, 134 F.3d 72, 75-79 (2d Cir.1998) (applying analysis to FIRREA claims); Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 848-52 (2d Cir.1987) (applying the analysis to international arbitration of RICO claims). In the bankruptcy setting, congressional intent to permit a bankruptcy court to enjoin arbitration is sufficiently clear to override even international arbitration agreements.
*640 The Bankruptcy Court has broad, well-established powers premised upon 28 U.S.C. §§ 1334 and 157 to preserve the integrity of the reorganization process. See LTV Corp. v. Miller, 109 B.R. 613, 621 (S.D.N.Y.1990). Section 105 of the Bankruptcy Code states that where it has jurisdiction, the bankruptcy “court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title.” 11 U.S.C. § 105(a) (emphasis added). The language of § 362, the automatic stay provision, is equally encompassing: “Except as provided in subsection (b) of this section, a petition [for bankruptcy protection] ... operates as a stay, applicable to all entities, of — the commencement or continuation ... of a judicial, administrative or other action or proceeding against the debt- or....” 11 U.S.C. § 362(a)(1). “As the legislative history of the automatic stay provision reveals, the scope of section 362(a)(1) is broad, staying all proceedings, including arbitration....” FAA v. Gull Air, Inc., 890 F.2d 1255, 1262 (1st Cir. 1989). Finally, one of the core purposes of bankruptcy “effectuated by Sections 362 and 105 of the Code” is to “allow the bankruptcy court to centralize all disputes concerning property of the debtor’s estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.” Shugrue v. Air Line Pilots Ass’n Int’l (In re Ionosphere Clubs, Inc.), 922 F.2d 984, 989 (2d Cir. 1990). However, by not granting the bankruptcy court exclusive jurisdiction over non-core matters, “it is clear that in 1984 Congress did not envision all bankruptcy related matters being adjudicated in a single bankruptcy court.” Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1157 (3d Cir.1989); see also MCI Telecomm. Corp. v. Gurga, 176 B.R. 196, 200 (9th Cir.1994).
Thus, there will be occasions where a dispute involving both the Bankruptcy Code, 11 U.S.C. § 101 et seq., and the Arbitration Act, 9 U.S.C. § 1 et seq., “presents a conflict of near polar extremes: bankruptcy policy exerts an inexorable pull towards centralization while arbitration policy advocates a decentralized approach towards dispute resolution.” Societe Nationale Algerienne Pour La Recherche, La Production, Le Transport, La Transformation et La Commercialisation des Hydrocarbures v. Distrigas Corp., 80 B.R. 606, 610 (D.Mass.1987).
Such a conflict is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration. See Hays & Co., 885 F.2d at 1161. Core proceedings implicate more pressing bankruptcy concerns, but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration. “Certainly not all core bankruptcy proceedings are premised on provisions of the Code that ‘inherently conflict’ with the Federal Arbitration Act; nor would arbitration of such proceedings necessarily jeopardize the objectives of the Bankruptcy Code.” Insurance Co. of N. Am. v. NGC Settlement Trust & Asbestos Claims Management Corp. (In re Nat’l Gypsum Co.), 118 F.3d 1056, 1067 (5th Cir.1997). However, there are circumstances in which a bankruptcy court may stay arbitration, and in this case the bankruptcy court was correct that it had discretion to do so.
In exercising its discretion over whether, in core proceedings, arbitration provisions ought to be denied effect, the bankruptcy court must still “carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause.” Hays & Co., 885 F.2d at 1161. The Arbitration Act as interpreted by the Supreme Court dictates that an arbitration clause should be enforced “unless [doing so] would seriously jeopardize the objectives of the Code.” Id. That inquiry constitutes a mixed question of law and fact with legal conclusions being reviewed de novo, and factual determinations being *641 reviewed for clear error. See In re Ionosphere Clubs, 922 F.2d at 988. Where the bankruptcy court has properly considered the conflicting policies in accordance with law, we acknowledge its exercise of discretion and show due deference to its determination that arbitration will seriously jeopardize a particular core bankruptcy proceeding. We see no basis for disturbing the bankruptcy court’s determination to that effect here.
In the instant case, the declaratory judgment proceedings are integral to the bankruptcy court’s ability to preserve and equitably distribute the Trust’s assets. Furthermore, as we have previously pointed out, the bankruptcy court is the preferable venue in which to handle mass tort actions involving claims against an insolvent debtor. See Keene Corp. v. Fiorelli (In re E. & S. Dist. Asbestos Litig.), 14 F.3d 726, 732 (2d Cir.1993). The need for a centralized proceeding is further augmented by the complex factual scenario, involving multiple claims, policies and insurers. The bankruptcy court was not clearly erroneous in finding that “arbitration of the disputes raised in the Complaint would prejudice the Trust’s efforts to preserve the Trust as a means to compensate claimants.” U.S. Lines I, 169 B.R. at 825. It was within the bankruptcy court’s discretion to refuse to refer the declaratory judgment proceedings, which it properly found to be core, to arbitration.
CONCLUSION
The opinion and order of the district court is reversed, and the case is remanded for further proceedings consistent with this opinion. Costs of the appeal are awarded to the Trust.

. This paragraph expresses the views of the author. Each of the other members of the panel has filed a concurring opinion setting forth his separate views.