**In re DPH HOLDINGS CORP., Reorganized Debtors.**

**Ace American Insurance Company and Pacific Employers Insurance Company, Plaintiffs–Appellees/Cross–Appellants,**

v.

**DPH Holdings Corp., Defendant–Appellee,**

and

**State of Michigan Workers' Compensation Insurance Agency and State of Michigan Funds Administration, Defendants–Appellants/Cross–Appellees.**

**Bankruptcy No. 05–44481 (RDD). Adversary No. 09–01510–r.**

United States District Court, S.D. New York.

Sept. 9, 2010.

Lawrence J. Kotler, Margery N. Reed, Wendy M. Simkulak, Duane, Morris & Heckscher LLP, Philadelphia, PA, Lawrence J. Kotler, Wendy M. Simkulak, William Heuer, Duane Morris LLP, Martin G. Bunin, Alston & Bird LLP, New York, NY, Robert G. Kamenec, Plunkett Cooney,

Bloomfield Hills, MI, for Plaintiffs–Appellees/Cross–Appellants.

Delphi Corporation, pro se.

Susan Przekop–Shaw, Dennis Jay Raterink, Michigan Dept. of Attorney General, Lansing, MI, for Defendants–Appellants/Cross–Appellees.

## DECISION AND ORDER

VICTOR MARRERO, District Judge.

Pursuant to this Court's Order, dated April 13, 2010 (the "April 13 Order"), granting leave for a limited interlocutory appeal, the State of Michigan Workers' Compensation Insurance Agency (the "Agency") and Funds Administration (the "Funds," together with the Agency, the "Michigan Defendants"), appeal an order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") dated January 26, 2010 (the "January 26 Order"). The January 26 Order denied the Michigan Defendants' joint motion to dismiss an adversary complaint filed against them and defendant debtor Delphi Corporation and its predecessor Delphi Automotive Systems ("Delphi") [1] by plaintiffs Ace American Insurance Company and Pacific Employers Insurance Company ("Ace/Pacific").[2] The Michigan Defendants argue that: (1) they are entitled to sovereign immunity, and (2) the Bankruptcy Court lacks subject matter jurisdiction over the proceeding. Pursuant to the April 13 Order, Ace/Pacific cross-appeals, seeking affirmance of the January 26 Order with respect to the Michigan Defendants' sovereign immunity defense on two alternative bases: (1) that the Michigan Defendants voluntarily engaged in litigation conduct and waived sovereign immunity; and (2) that the Agency and the Funds act as a unitary creditor, and that both waived their sovereign immunity when the Funds filed claims in the Delphi bankruptcy case. For the reasons stated below, the Court AFFIRMS the January 26 Order.

## I. BACKGROUND [3]

Delphi filed its Chapter 11 petition in the Bankruptcy Court on October 8, 2005. On December 16, 2005, Delphi filed a motion to assume certain insurance contracts with Ace/Pacific, including retention policies, providing excess workers' compensation coverage (the "Retention Policies"), and deductible policies (the "Deductible Policies," collectively, the "Policies"),

---

1. As a result of the bankruptcy, Delphi no longer exists. DPH Holdings Corp. is the holding company charged with distributing the estate.

2. The Bankruptcy Court set forth its reasoning in an amended bench ruling on January 12, 2010. (*See* Declaration of Susan Przekop–Shaw in Support of Defendants–Appellants Michigan Workers' Compensation Agency's and Michigan Funds Administration's Joint Appellant Brief, dated June 21, 2010, Ex. C ("Amended Bench Ruling").).

3. The factual summary here is derived primarily from the following documents and any declarations or exhibits attached thereto: Defendant–Appellants Michigan Workers' Compensation Agency and Michigan Funds Administration's Joint Appellant Brief, dated

June 21, 2010 ("Michigan Defs.' Brief"); Plaintiffs' Brief in Opposition to Main Brief on Appeal of State of Michigan Workers' Compensation Agency and State of Michigan Funds Administration, dated July 20, 2010; Brief of Defendant–Appellee DPH Holdings Corp., dated July 20, 2010; Defendants–Appellants Michigan Workers' Compensation Agency's and Michigan Funds Administration's Joint Reply to Plaintiffs–Appellees' and Defendant–Appellee Delphi's Response Briefs to Defendants–Appellants Michigan Workers' Compensation Agency's and Michigan Funds Administration's Joint Appellant Brief, dated August 9, 2010. Except where specifically referenced, no further citation to these sources will be made.

which, according to Delphi and Ace/Pacific, insure certain of Delphi's affiliates not authorized as self-insurers under the Michigan Worker's Disability Compensation Act (the "Act"). By order dated January 6, 2006 (the "January 6 Order"), the Bankruptcy Court authorized Delphi to assume the Policies and enter into post-petition policies and agreements, which continue to bind Ace/Pacific and Delphi. Pursuant to the January 6 Order, obligations owing to Ace/Pacific from Delphi under the Policies are accorded administrative expense priority.

The Bankruptcy Court confirmed Delphi's plan of reorganization in January 2008. On July 15, 2009, Delphi proposed certain modifications to the reorganization plan. The Michigan Defendants opposed those modifications, noting that Delphi was self-insured under the Act, and that the proposed modifications did not indicate how Delphi would continue to meet its workers' compensation obligations. In their objection, the Michigan Defendants also indicated that they had discovered the existence of workers' compensation coverage by Ace/Pacific and that they intended to provide notice to Ace/Pacific of their responsibility for coverage of the claims.

After July 15, 2009, the Agency sent Ace/Pacific notice of the workers' compensation claims filed by former Delphi employees injured during the time that Ace/Pacific had filed notices of issuance of policy with the Agency, known as Form 400s (the "Notices"). Also at this time, the Funds filed two administrative expense claims in Delphi's case seeking payment of $1,130,191.92 based on Delphi's status as a self-insured employer. In addition, the Michigan Attorney General filed an administrative expense claim in the amount of $5,557,750, and two general unsecured proofs of claims on behalf of the Michigan Self–Insurers' Security Fund, a division of the Funds that is authorized to make pay-ments to injured employees of a self-insurer if that employer is insolvent and unable to continue making payments. The Bankruptcy Court has since found the general claims to be untimely.

The Bankruptcy Court confirmed the modified plan of reorganization in July 2009. Delphi substantially consummated the plan as modified, and emerged from Chapter 11 in October 2009 as DPH Holdings Corp. Ace/Pacific commenced the instant adversary proceeding on October 6, 2009 (the "Adversary Proceeding") seeking a declaration that the Deductible Policies do not provide coverage for the injured workers' claims and that the Retention Policies provide only excess coverage of the claims. In the alternative, Ace/Pacific asks the Bankruptcy Court to reform the Policies to reflect the parties' shared understanding that Delphi's workers' compensation obligations were self-insured.

Following the commencement of the Adversary Proceeding against Delphi and the Michigan Defendants, on November 4, 2009, Ace/Pacific filed claims for payment of administrative expenses in an amount of $67,311,662.50, equaling the total amount of the Michigan Defendants' claims filed in July 2009. Ace/Pacific based this application on its position that Delphi must reimburse Ace/Pacific for any claims that are paid to the injured workers.

On November 10, 2009, the Michigan Defendants moved to dismiss the Adversary Proceeding for lack of subject matter jurisdiction, sovereign immunity, and failure to state a claim. In the alternative, the Michigan Defendants requested that the Bankruptcy Court abstain to allow the Michigan courts and administrative bodies to resolve the dispute. In its January 26 Order, the Bankruptcy Court did not rule on the motion to dismiss for failure to state a claim, but found that it had jurisdiction over the Adversary Proceeding, and that the Michigan Defendants were

not entitled to sovereign immunity. The Bankruptcy Court also denied the Michigan Defendants' motion to dismiss on abstention grounds. By its April 13 Order, this Court granted the Michigan Defendants and Ace/Pacific leave to appeal the January 26 Order as it pertained to the Bankruptcy Court's sovereign immunity and subject matter jurisdiction determinations. The Court denied the Michigan Defendants leave to appeal from the Bankruptcy Court's abstention determinations, as well as from the Bankruptcy Court's decision to exercise jurisdiction under the U.S. Declaratory Judgment Act, 28 U.S.C. § 2201.

## II. *STANDARD OF REVIEW*

■ On appeal, the district court reviews a bankruptcy court's findings of facts for clear error, *see Nova Info. Sys., Inc. v. Premier Operations Ltd. (In re Premier Operations)*, 294 B.R. 213, 217 (S.D.N.Y.2003), and applies a de novo standard to questions of law. *See Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 620 (2d Cir.1999).

## III. *DISCUSSION*

### A. *SUBJECT MATTER JURISDICTION*

The Michigan Defendants assert that the Adversary Proceeding does not arise under or in Title 11 of the United States Code ("Title 11"), and is not related to a case under Title 11. They also argue that the Bankruptcy Court lacks post-confirmation jurisdiction. The Court disagrees.[4]

### 1. *"Arising Under" or "Arising In" Jurisdiction*

The Court's bankruptcy jurisdiction is governed by 28 U.S.C. § 1334 ("§ 1334"). Section 1334(b) grants the Court "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). A bankruptcy court may "hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," but where a matter is "related to" the Court's bankruptcy jurisdiction, a bankruptcy court may enter only proposed findings of fact and conclusions of law that are subject to de novo review by the district courts. 28 U.S.C. § 157(b)(1), (c)(1).

Proceedings "arising in" or "arising under" Title 11 correspond to the Court's core bankruptcy jurisdiction as defined in 28 U.S.C. § 157 ("§ 157"), whereas those proceedings "related to" a case under Title 11 correspond to the Court's non-core jurisdiction. Congress incorporated this

---

4. The Michigan Defendants divide the Adversary Proceeding into two issues: first, whether Ace/Pacific is liable to Delphi's former employees by its filing of the Notices with the Agency ("Issue One"), and second, whether the Policies require Ace/Pacific to pay the workers' compensation claims ("Issue Two"). In objecting to the Bankruptcy Court's jurisdiction, they specifically contend that the Bankruptcy Court may not exercise jurisdiction over Issue One.

This Court declines to analyze the Adversary Proceeding in terms of Issue One and Issue Two. On the face of Ace/Pacific's complaint, dated October 6, 2009 (the "Adversary Complaint"), the Court finds no indication that Ace/Pacific now seeks a determination of Issue One or its rights under the Act. Instead, as discussed above, Ace/Pacific requests only a declaratory judgment as to coverage under the Policies for claims filed with the Agency against Delphi seeking workers' compensation, as well as reformation if the Policies are determined to provide insurance to Delphi. Accordingly, despite the potential import of the Notices on Ace/Pacific's ultimate liability, the Court is limited to determining whether the Bankruptcy Court has jurisdiction over the present matter: whether, according to the Policies, Ace/Pacific is responsible for the pending workers' compensation claims.

core/non-core distinction when it amended the Bankruptcy Reform Act of 1978 (the "1978 Act") following the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, in which a four-justice plurality of the Supreme Court found that the Court lacked bankruptcy jurisdiction over a damages claim against a debtor. *See* 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). The Supreme Court found that the broad grant of jurisdiction to Article I bankruptcy courts under the 1978 Act violated Article III, and held that "the restructuring of debtor-creditor relations, which is at the core of the federal bankruptcy, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages." *Id.* at 71, 102 S.Ct. 2858.

The Second Circuit has held that "core proceedings," as used in § 157, "should be given a broad interpretation that is 'close to or congruent with constitutional limits' as set forth in *Marathon*, and that *Marathon* is to be construed narrowly." *United States Lines, Inc. v. American S.S. Owners Mut. Prot. & Indem. Ass'n, Inc. (In re U.S. Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir.1999) (*quoting Resolution Trust Corp. v. Best Prods. Co. (In re Best Prods. Co.)*, 68 F.3d 26, 31 (2d Cir.1995) (quotations omitted)). Specifically, claims arising under Title 11 involve claims "predicated on a right created by a provision of title 11." *World Travel Vacation Brokers, Inc. v. Bowery Sav. Bank (In re Chargit Inc.)*, 81 B.R. 243, 247 (Bankr.S.D.N.Y.1987). Claims that arise in a case under Title 11 involve proceedings "that are not based on any right created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y.1991) (quotations omitted).

Here, Ace/Pacific seeks a determination of the scope of Delphi's coverage under the Policies. In *U.S. Lines*, the Second Circuit set forth the analysis required for determining whether a proceeding involving a contract is a core proceeding:

> Under *Marathon*, whether a contract proceeding is core depends on (1) whether the contract is antecedent to the reorganization petition; and (2) the degree to which the proceeding is independent of the reorganization.

*U.S. Lines*, 197 F.3d at 637. The degree of independence "hinges on the 'nature of the proceeding.'" *Id.* (*quoting S.G. Phillips Constructors, Inc. v. City of Burlington, Vt. (In re S.G. Phillips Constructors, Inc.)*, 45 F.3d 702, 707 (2d Cir.1995)). To that effect, the *U.S. Lines* Court held that "[p]roceedings can be core by virtue of their nature if either (1) the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings, or (2) the proceedings directly affect a core bankruptcy function." *Id.* (citations omitted).

As a further caveat, contract claims are not core merely because they involve the property of the estate; a principle of that breadth would "create[ ] an exception to *Marathon* that would swallow the rule." *Id.* (quotations omitted) (alteration in original). Nor may a "'determination that a proceeding is not a core proceeding ... be made solely on the basis that its resolution may be affected by State law.'" *Ben Cooper, Inc. v. Insurance Co. of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1399 (2d Cir.1990) (*quoting* 28 U.S.C. § 157(b)(3)).

The Court finds that the Adversary Proceeding is a core proceeding to the extent that Ace/Pacific's claims involve post-petition contracts. *See U.S. Lines*, 197 F.3d at 637–38 (*citing* 28 U.S.C.

§ 157(b)(2)(A)); *Ben Cooper*, 896 F.2d at 1399–1400. As for the claims related to the pre-petition contracts, the Court must determine whether the Policies have an "impact ... on other core bankruptcy functions [that would] nevertheless render the proceedings core." *U.S. Lines*, 197 F.3d at 638. The Court finds that they do.

Disputes involving major insurance contracts do often have a significant effect on core functions of the bankruptcy court, permitting the bankruptcy court to exercise jurisdiction. *See id.* Here, the Bankruptcy Court found that the Adversary Proceeding involved the allowance or disallowance of claims, as well as the administration of the estate and liquidation of assets—core functions pursuant to § 157(b)(2)(A), (B) and (O). The Court agrees.

The Michigan Defendants argue, however, that *U.S. Lines* has no application to the Adversary Proceeding because there is actually no contract at issue. The Michigan Defendants contend, as discussed in footnote four above, that Delphi and Ace/Pacific's liabilities for the workers' compensation payments, under the Act, relate only to the Notices filed with the Agency, and that liability has no connection to the Policies. Despite the Michigan Defendants' argument that the Notices are at the center of the Adversary Proceeding, the Adversary Complaint explicitly states that it "is an action to confirm the scope of insurance coverage for workers' policies under certain multi-state insurance policies." (Adversary Complaint ¶ 1.) The Michigan Defendants characterize the Adversary Proceeding as an action to determine whether or not Ace/Pacific is liable for the injured workers' claims, but the Adversary Complaint seeks a determination of Ace/Pacific's liability under the Policies, not under the Act. Accordingly, the Court is not persuaded by the Michigan

Defendants' arguments that the Adversary Proceeding does not involve a contract.

In determining the outcome of this Adversary Proceeding, the Bankruptcy Court will make threshold decisions that will ultimately determine the validity and priority of the claims filed by the Michigan Funds and whether Ace/Pacific will be entitled to administrative expenses. These determinations will impact the distribution of Delphi's estate to its creditors. If, for example, the Bankruptcy Court finds, on the merits, that Ace/Pacific is liable under the Policies, the Funds' claims will be disallowed because its claims are based on its contention that Delphi is self-insured. On the other hand, if the Bankruptcy Court determines that Ace/Pacific is not liable under the Policies, the Funds' claims may, in fact, be allowed. The Court bases its determination of jurisdiction not merely on the possibility that the Adversary Proceeding could have the effect of augmenting the estate, *see Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2d Cir. 1993), but on the potential that the Adversary Proceeding could moot claims against Delphi and affect the liquidation of the estate pursuant to its Chapter 11 plan.

The Court divines no requirement from the case law, as the Michigan Defendants' arguments here would suggest, that in order to constitute a core proceeding under § 157, the immediate result of a bankruptcy proceeding must be the automatic allowance or disallowance of claims. The Court concurs with the Bankruptcy Court's conclusion that a declaratory judgment proceeding that " 'set[s] the table for a determination under title 11' " for the operation of the Bankruptcy Court's core functions, such as allowance or disallowance of claims or the administration of the estate, is a core proceeding. (*See* Amended Bench Ruling at 19 (*quoting In re*

*PSINet, Inc. v. Cisco Sys. Cap. Corp. (In re PSINet, Inc.),* 271 B.R. 1, 12 (Bankr. S.D.N.Y.2001)) (alteration in original).) Accordingly, the Court finds that the Adversary Proceeding is a core proceeding.

### 2. *"Related to" Jurisdiction*

■ Even if the Court accepted the Michigan Defendants' arguments that the Adversary Proceeding is not a core proceeding under § 157, the Adversary Proceeding is nonetheless "related to" the Court's bankruptcy jurisdiction under § 1334.

■ The Michigan Defendants maintain that the Adversary Proceeding is not related to a Title 11 case because "a decision will not issue ordering debtors to pay benefits or to pay Ace/Pacific administrative expenses." (Michigan Defs.' Brief at 49.) A proceeding is related to a case under Title 11 if the outcome of the proceeding might have a "conceivable effect" on the estate. *Publicker Indus., Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 114 (2d Cir.1992). As such, the Michigan Defendants' assertion is beside the point. First, under this logic, a bankruptcy court could never exercise jurisdiction over a declaratory judgment action as a "related to" proceeding. Second, as discussed above, any number of outcomes could affect the administration of the estate. For example, the Bankruptcy Court's determination here sets the stage for administrative and priority claims, which, as the Bankruptcy Court noted in the Amended Bench Ruling, could hamper Delphi's ability to comply with its reorganization plan. Accordingly, the Court affirms the Bankruptcy Court's holding with respect to its "related to" jurisdiction over the Adversary Proceeding.

### 3. *Post-confirmation Jurisdiction*

■ The Michigan Defendants argue that the Bankruptcy Court may not exercise post-confirmation jurisdiction over the Adversary Proceeding. They contend that post-confirmation jurisdiction is limited, and that because the matter does not bear a close connection with Delphi's plan and nothing in the plan specifically provides jurisdiction over this dispute, the Bankruptcy Court lacks jurisdiction over the Adversary Proceeding. The Court disagrees.

■ "Section 1334 does not expressly limit the bankruptcy court's jurisdiction following plan confirmation. Nevertheless, all courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks." *Penthouse Media Group v. Guccione (In re General Media Inc.),* 335 B.R. 66, 73 (Bankr.S.D.N.Y.2005) (citation omitted). A party asking a bankruptcy court to exercise post-confirmation jurisdiction must establish that (1) the matter has a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan" and (2) that the plan "provide[s] for the retention of jurisdiction over the dispute." *Id.* at 73–74 (quotations omitted). Of course, irrespective of reorganization plan provisions, a bankruptcy court cannot exercise jurisdiction outside of that provided for by § 1334.

■ Most important here, however, is that, where a debtor's plan is a liquidating plan, and "the reorganized debtor's sole purpose is to wind up its affairs, convert its assets to cash, and pay creditors a pro rata dividend," the bankruptcy court's post-confirmation jurisdiction is more broad because its jurisdiction relates directly to core functions of the bankruptcy court and its exercise of jurisdiction does not require the bankruptcy court to super-

vise a newly reorganized business. *See Kirschner v. Grant Thornton LLP (In re Refco, Inc. Sec. Lit.)*, 628 F.Supp.2d 432, 442 (S.D.N.Y.2008) (quotations omitted). Here, Delphi's plan is a liquidating plan. The Bankruptcy Court has jurisdiction over the Adversary Proceeding because it will have an effect on the determination of claims and expenses, and ultimately the distribution of the estate—Delphi's sole purpose at this time. Accordingly, the Court agrees with the Bankruptcy Court that the Adversary Proceeding relates to "the core post-confirmation bankruptcy function of dealing with claims against the estate and the estate's remaining assets for distribution." (Amended Bench Ruling at 13.)

## B. *SOVEREIGN IMMUNITY*

The Michigan Defendants argue that they are entitled to sovereign immunity, and that therefore they should not be subject to this Adversary Proceeding. They assert that: (1) Congress did not abrogate the Michigan Defendants' sovereign immunity under 11 U.S.C. § 106 ("§ 106"); (2) the Bankruptcy Court erroneously interpreted § 106(a); (3) the Bankruptcy Court's decision was contrary to the automatic stay provision, 11 U.S.C. § 362(b)(4) ("§ 362(b)(4)"); and (4) § 106(a), as applied here, was not enacted pursuant to valid constitutional authority. The Court is not persuaded by any of the Michigan Defendants' arguments on these points, and denies their appeal.[5]

1. *"Abrogation" Pursuant to Central Virginia Community College v. Katz*

■ The Michigan Defendants argue that § 106 is constitutionally deficient be-cause it exceeds the authority granted to Congress by the Bankruptcy Clause of the Constitution. Because the Bankruptcy Court's jurisdiction over the Adversary Proceeding is required in order for it to effectuate its in rem jurisdiction over the estate, the Court finds the application of § 106 to be within constitutional limits.

■ Section 106(a) provides that:

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit ... with respect to the following:

(1) Sections ... 502, 503. . . .

(2) The court may hear and determine any issue arising with respect to the application of such section to governmental units.

(3) The court may issue against a governmental unit an order, process, or judgment under such sections of the Federal Rules of Bankruptcy Procedure. . . .

11 U.S.C. § 106(a). The Supreme Court held in *Central Virginia Community College v. Katz*, however, that abrogation of a state's sovereign immunity with respect to federal bankruptcy laws is traceable to the Constitutional Convention, not to § 106 or the specific bankruptcy legislation enacted by Congress. *See* 546 U.S. 356, 377, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006) ("States agreed in the plan of the Convention not to assert any sovereign immunity defense they might have in proceedings brought pursuant to 'Laws on the subject of Bankruptcies.' " (*quoting* U.S. Const. art. I., § 8, cl. 4)). This non-statutorily based abrogation correlates with the Bankruptcy Court's primarily in rem jurisdiction. *See Tennessee Student Assistance Corp. v. Hood*, 541 U.S. 440,

5. Having affirmed the Bankruptcy Court's determination as to sovereign immunity, the Court need not consider Ace/Pacific's cross-appeal on the issue proposing alternative bases to reach the same conclusion.

448, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004) ("A bankruptcy's court's in rem jurisdiction permits it to determin[e] all claims that anyone, whether named in the action or not, has to the property or thing in question. The proceeding is one against the world." (quotations omitted) (alteration in original)). Although not "every law labeled a 'bankruptcy' law could, consistent with the Bankruptcy Clause, properly impinge on state sovereign immunity," *Katz* held that "[i]n ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might have otherwise asserted in proceedings necessary to effectuate in rem jurisdiction of the bankruptcy courts." *Katz*, 546 U.S. at 377–78 & n. 15, 126 S.Ct. 990. Accordingly, § 106 does not function to abrogate immunity, and remains relevant to the extent that it indicates whether Congress has specifically exempted a governmental unit from the application of the bankruptcy laws. *See Florida Dep't of Revenue v. Omine (In re Omine)*, 485 F.3d 1305, 1317 (11th Cir. 2007), *withdrawn pursuant to settlement*, No. 06–11655–II, 2007 WL 6813797 (11th Cir. June 26, 2007); *see also Katz*, 546 U.S. at 379, 126 S.Ct. 990 ("Congress may, at its option, either treat States in the same way as other creditors insofar as concerns 'Laws on the subject of Bankruptcies' or exempt them from operation of such laws.").

The Michigan Defendants assert that the Bankruptcy Court's exercise of jurisdiction over them as governmental units surpasses the constitutional limits set by *Katz*. They argue that they have no claims against the Delphi estate at issue here, that the estate has no claims against them, and, in sum, that the claims against them do not involve adjudication of the rights to the res. As is the case with their arguments objecting to jurisdiction, the Michigan Defendants rely on the theory

that Ace/Pacific's liability hinges on the Notices, which, in their view, do not relate to Delphi's estate. They further contend that they have no interest in the Policies themselves as res. It is the Michigan Defendants' position that *Katz's* waiver of sovereign immunity hinges on the state's interest in or control over the debtor's property, and that here the Michigan Defendants have no interest in or control over Delphi's property. Accordingly, the Michigan Defendants maintain that they should be permitted to invoke state sovereign immunity.

▮ The Michigan Defendants read *Katz* too narrowly. In *Hood*, decided prior to *Katz*, the Supreme Court held that a state's sovereign immunity is not implicated where a bankruptcy court exercises its in rem jurisdiction over the bankruptcy estate, *see* 541 U.S. at 447, 124 S.Ct. 1905, and *Katz* extended that holding even further, concluding that sovereign immunity is abrogated with respect to proceedings necessary to effectuate, or ancillary to, the bankruptcy court's in rem jurisdiction. *See* 546 U.S. at 378, 126 S.Ct. 990. The Michigan Defendants read into *Hood* and *Katz* a requirement of control or interest regarding the debtor's property. But pursuant to those cases, a bankruptcy court must exercise jurisdiction over a governmental unit in order to effectuate its in rem jurisdiction—even if that governmental unit does not have a direct interest in or control over a debtor's property.

Here, Ace/Pacific seeks a determination of its liabilities under the Policies with respect to Delphi's workers' compensation liabilities. The Bankruptcy Court's adjudication of this dispute will have an effect on the amount and priority of claims to the estate—even if the involved parties will have further hurdles to clear before certain claims are allowed or disallowed.

These claims include those asserted by the Michigan Funds, based on their contention that Delphi is a self-insurer. As discussed above, in the event that the Bankruptcy Court finds Ace/Pacific liable for the claims pursuant to the Policies, the Funds' claims and administrative expenses will be disallowed and Ace/Pacific's administrative expenses may be allowed. Similarly, if the Bankruptcy Court concludes that Ace/Pacific is not liable under the Policies, the Funds' claims and administrative expenses may be allowed and Ace/Pacific's administrative expenses will be disallowed. In this way, the Adversary Proceeding represents an exercise of the Bankruptcy Court's in rem jurisdiction. *See Universal Oil Ltd. v. Allfirst Bank (In re Millenium Seacarriers, Inc.)*, 419 F.3d 83, 92 (2d Cir. 2005) ("The bankruptcy court's in rem jurisdiction over a debtor's estate, in turn, permits a determination of all claims that 'anyone, whether named in the action or not, has to the property or thing in question.' " (*quoting Hood*, 541 U.S. at 448, 124 S.Ct. 1905) (citation omitted)). Moreover, the Adversary Proceeding seeks the Court's determination of Ace/Pacific's liabilities under the Policies, which are assets of the estate. Ace/Pacific asks the Bankruptcy Court to resolve a controversy that is necessary to effectuate the Bankruptcy Court's in rem jurisdiction over the estate and its equitable distribution. Accordingly, the Court affirms the Bankruptcy Court's determination that the application of § 106(a) to the Michigan Defendants is within the constitutional limits delineated by *Katz*.

### 2. Interpretation of § 106(a)(2)

The Michigan Defendants argue that the Bankruptcy Court failed to correctly interpret § 106(a)(2) to permit the exercise of jurisdiction over the Michigan Defendants without regard to state sovereign immunity. The Court disagrees.

Section 106(a)(2), as stated above, provides that "[t]he court may hear and determine any issue arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(2). The Michigan Defendants assert that the Bankruptcy Court failed to properly apply the specific sections, here 11 U.S.C. §§ 502 and 503 ("§ 502" and "§ 503", respectively), to the Funds and the Agency. Section 502 pertains to the allowance of claims or interests, and provides that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." *Id.* § 502(a). Section 503 pertains to the allowance of administrative expenses and provides that "[a]n entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." *Id.* § 503(a).

The Michigan Defendants assert that §§ 502 and 503 do not apply to them because they have not filed any claims that are at issue in this Adversary Proceeding. They point out that the Agency has not filed any claims or administrative expense requests against the estate, and that although the Funds filed claims for prepetition workers' compensation benefits, the Bankruptcy Court denied them as untimely. Finally, the Michigan Defendants argue that the Funds' expense claims have no relationship to either the Adversary Proceeding or the Policies.

Considering the broad language of § 106(a), the Bankruptcy Court held that the statute does not require that the governmental units themselves must file a claim, or alternatively, that a claim made by a governmental unit must be affected by the outcome of the bankruptcy proceeding. The Court agrees with the Bankruptcy Court, and finds the Michigan Defendants' arguments unpersuasive. To

require that the governmental units file claims themselves, or have made claims explicitly at issue in the proceeding, would be to read absent terms into the statute. The Michigan Defendants demand that Ace/Pacific provide coverage for the workers' compensation claims, yet they have filed claims against Delphi based on their self-insured status, implicating the allowance or disallowance of certain claims and expenses. Accordingly, the Court finds that §§ 502 and 503, relating to the allowance and disallowance of claims and expenses, apply here to the Michigan Defendants.

### 3. Constitutionality of § 106

The Michigan Defendants argue that Congress violated its constitutional authority under Article I of the Constitution when it enacted § 106. For this proposition, the Michigan Defendants rely on *Seminole Tribe of Florida v. Florida*, where the Supreme Court held that Congress could not abrogate the states' sovereign immunity through its powers under Article I of the Constitution. *See* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). In the wake of *Seminole*, many courts called into question the vitality of § 106. *See, e.g., Arecibo Cmty. Health Care, Inc. v. Puerto Rico*, 270 F.3d 17, 21 (1st Cir. 2001); *Sacred Heart Hosp. v. Department of Pub. Welfare (In re Sacred Heart Hosp.)*, 133 F.3d 237, 245 (3d Cir.1998). But *Katz* put to rest any doubt as to § 106's constitutionality. *See, e.g., Omine*, 485 F.3d at 1305 ("As a result of ... *Katz*, it is necessary to point out that our prior reasoning of [*Georgia Higher Educ. Assistance Corp. v. Crow (In re Crow)*, 394 F.3d 918 (11th Cir.2004)] invalidating § 106(a), in part, on the basis that Congress may not abrogate state sovereign immunity by legislation passed pursuant to its Article I powers, is no longer good law.").

Although *Katz* did not address § 106's constitutionality directly, the Supreme Court observed, as discussed above, that the source of the abrogation of state sovereign immunity in the context of bankruptcy law is not Congress's legislative powers, but the states' ratification of the Constitution. At that point, the states consented to waive the defense of their sovereign immunity with respect to "Laws on the subject of Bankruptcies." U.S. Const. art. I, § 8, cl. 4. In other words, the abrogation here is not traced to § 106, but to the Constitutional Convention. After *Katz*, it is simply inaccurate to view abrogation in the context of bankruptcy law, as it may previously have been understood under *Seminole*, as an exercise of Congress's power pursuant to Article I. *See Katz*, 546 U.S. at 378, 126 S.Ct. 990 (stating that the "relevant 'abrogation' is the one effected in the plan of the Convention, not by statute."). In asking this Court to hold § 106 unconstitutional by reference to *Seminole*, the Michigan Defendants seek to resurrect a view of state sovereign immunity under the Bankruptcy Clause that has been long since dead. Accordingly, their appeal on this ground is denied.

### 4. The Automatic Stay Provision

The Michigan Defendants argue that the Bankruptcy Court's interpretation of § 106 is contrary to the goals and rationale of § 362(b)(4). The Court disagrees.

Section 362, which provides that a filing of a petition does not operate as a stay "of the commencement or continuation of an action or proceeding by a governmental unit ... to enforce such governmental unit's or organization's police and regulatory power," makes no reference to state sovereign immunity. 11 U.S.C. § 362(b)(4). In fact, as Ace/Pacific points out, § 106 provides that sovereign immunity is abrogated with respect to § 362(b)(4) when it is applied to governmental units. The purposes of § 362(b)(4) are to "provide[ ] the debtor with a breathing spell

from his creditors" and to "allow[ ] the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Shugrue v. Air Line Pilots Ass'n, Int'l (In re Ionosphere Clubs, Inc.)*, 922 F.2d 984, 989 (2d Cir.1990) (quotations omitted). If anything, § 362(b)(4) supports a broad reading of § 106, allowing the Bankruptcy Court to preside over all disputes concerning the debtor's estate, even those involving governmental units. Accordingly, the Court finds that the Michigan Defendants' attempt to use § 362(b)(4) as evidence of Congress's intent to strictly apply § 106 unavailing.

## IV. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the order of the United States Bankruptcy Court of the Southern District of New York (the "Bankruptcy Court") dated January 26, 2010, denying the motion of the State of Michigan Workers' Compensation Insurance Agency and Funds Administration to dismiss the adversary complaint filed by Ace American Insurance Company and Pacific Employers Insurance Company for lack of subject matter jurisdiction and state sovereign immunity (Adversary Proceeding No. 09–01510–r, Docket No. 69) is AFFIRMED; and it is further

**ORDERED** that the action is remanded to the Bankruptcy Court for further proceedings consistent with this opinion.

The Clerk of the Court is directed to terminate any pending motions and to close this case.

**SO ORDERED.**