**Irving H. PICARD, Plaintiff,**

v.

**Frank J. AVELLINO et al., Defendants.**

**Irving H. Picard, Plaintiff,**

v.

**Elins Family Trust et al., Defendants.**

**Irving H. Picard, Plaintiff,**

v.

**Robert Greenberger and Phyllis Greenberger, Defendants.**

**Irving H. Picard, Plaintiff,**

v.

**The M & B Weiss Family Limited Partnership et al., Defendants.**

**Irving H. Picard, Plaintiff,**

v.

**Stanley Shapiro et al., Defendants.**

Nos. 11 Civ. 3882 (JSR), 11 Civ. 4772 (JSR), 11 Civ. 4928 (JSR), 11 Civ. 6244 (JSR), 11 Civ. 5835 (JSR).

United States District Court, S.D. New York.

Feb. 29, 2012.

---

### MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Each of the defendants in the above captioned cases seeks mandatory withdrawal of the reference to the bankruptcy court of the underlying adversarial proceeding brought against each of them respectively by plaintiff Irving H. Picard, the trustee appointed pursuant to the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.* Because these motions raise identical questions of law, albeit in different combinations, the Court issues this one Memorandum Order to decide which aspects of the underlying proceedings will be withdrawn, and which not. In large part, the Court relies on the reasoning set forth in its opinion in *Picard v. Flinn Inv., LLC,* 463 B.R. 280 (S.D.N.Y. 2011), which withdrew the reference in still other adversarial proceedings in the underlying bankruptcy of Bernard L. Madoff Investment Securities ("Madoff Securities").

District courts have original jurisdiction over bankruptcy cases and all civil proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334. Pursuant to 28 U.S.C. § 157(a), the district court may refer actions within its bankruptcy jurisdiction to the bankruptcy judges of the district. The Southern District of New York has a standing order that provides for automatic reference.

■ Notwithstanding the automatic reference, the district court may, on its own motion or that of a party, withdraw the reference, in whole or in part, in appropriate circumstances. Withdrawal is mandatory "if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). Notwithstanding the plain language of this section, however, the Second Circuit has ruled that mandatory "[w]ithdrawal under 28 U.S.C. § 157(d) is not available merely whenever non-Bankruptcy Code federal statutes will be considered in the bankruptcy court proceeding, but is reserved for cases where substantial and material consideration of non-Bankruptcy Code federal statutes is necessary for the resolution of the proceeding." *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990).

The defendants in these cases identify many issues that they believe require "substantial and material consideration" of nonbankruptcy federal laws regulating organizations or activities affecting interstate commerce, including important unresolved issues under SIPA itself, a statute that has both bankruptcy and non-bankruptcy aspects and purposes. *See In re Bernard L. Madoff Investment Securities,* 654 F.3d 229, 235 (2d Cir.2011) ("SIPA serves dual purposes: to protect investors, and to protect the securities market as a whole."); *Picard v. HSBC Bank PLC,* 450 B.R. 406, 410 (S.D.N.Y.2011). The Court considers defendants' contentions in turn.

■ First, Shapiro and Greenberger argue that the Court must withdraw the reference to consider whether SIPA and other securities laws alter the standard that the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c). *Cf. In re New Times Sec. Servs., Inc.,* 371 F.3d 68, 87 (2d Cir.2004) ("[A] goal of greater investor vigilance, however, is not emphasized in the legislative history of SIPA."). In its prior decisions, the

Court has found not only that this issue merits withdrawal, but also that the securities laws do in fact alter the applicable standard. *See Picard v. Katz,* 462 B.R. 447, 455 (S.D.N.Y.2011) ("Just as fraud, in the context of federal securities law, demands proof of scienter, so too 'good faith' in this context implies a lack of fraudulent intent."). Specifically, the Court has held that, because the securities laws do not ordinarily impose any duty on investors to investigate their brokers, those laws foreclose any interpretation of "good faith" that creates liability for a negligent failure to so inquire. *Id.* Thus, to establish a lack of "good faith" on the part of securities customers under § 548(c) in the context of a SIPA bankruptcy, the trustee must show that the customer either actually knew of the broker's fraud or "willfully blinded" himself to it.

■ Determining whether the different allegations in each of the Trustee's complaints plausibly suggest "willful blindness"—which has historically been one of the law's most difficult concepts—will continue to require substantial and material consideration of the securities laws. Accordingly, the Court withdraws the reference in *Shapiro* and *Greenberger* in order to address the issue of how the securities laws affect what constitutes "good faith" in each case.

■ Second, each of the defendants argues that § 546(e) of the Bankruptcy Code prevents the Trustee from avoiding trans-

fers as fraudulent except under § 548(a)(1)(A) of that Code. For substantially the reasons stated in *Picard v. Flinn Inv., LLC,* the Court withdraws the reference in each case in order to address this issue. Notwithstanding the Court's decision in *Flinn,* the Trustee continues to claim that resolution of how § 546(e) applies to these cases does not require substantial and material consideration of the securities laws. Nonetheless, the Trustee's arguments in previously withdrawn cases belie this claim. For example, in *Picard v. Blumenthal,* the Trustee argued that applying § 546(e) would conflict with SIPA. *See* Trustee's Memorandum of Law in Opposition to Blumenthal's Motion to Dismiss at 16–17, *Picard v. Blumenthal,* 11 Civ. 4293(JSR). Moreover, when arguing that transfers from Madoff Securities fall outside the ambit of § 546(e) because they do not complete a securities transaction, the Trustee has referred the Court to 17 C.F.R. § 240.15c1–1, a securities regulation that defines the term "the completion of the transaction." Because the Court must consider these provisions of securities law as well as those identified in *Flinn,* the Court again concludes that the issue of § 546(e)'s application merit s withdrawal.[1]

■ Third, Greenberger, the M & B Weiss Family Limited Partnerships Shapiro, and the Elins Family Trust argue that the Trustee cannot avoid transfers that, under applicable securities laws, satisfied

---

**1.** The Trustee and SIPC argue that § 546(e) does not apply to those who allegedly knew of Madoff Securities' fraud. According to the Trustee and SIPC, such alleged "cognoscenti" could not believe that transfers from Madoff Securities settled securities transactions. Moreover, the Trustee and SIPC claim that alleged cognoscenti cannot receive any protection from securities contracts if they intended to defraud others when they entered into those contracts. *Cf. In re FBN Food Service, Inc.,* 175 B.R. 671, 682 (Bankr.

N.D.Ill.1994) ("A document which is a clear embodiment of the intent of the parties which has the purpose or effect of defrauding creditors of the bankruptcy estate is not protected by the parol evidence rule. A transferee of fraudulently conveyed funds cannot hide behind a contract which in fact defrauds creditors."). Nonetheless, the question before the Court is not whether § 546(e) applies, but whether resolving that issue will require substantial and material consideration of nonbankruptcy law, which it plainly does.

antecedent debts. The Court considered this issue at length in *Picard v. Flinn Inv., LLC,* 463 B.R. 280 (S.D.N.Y.2011), and concluded that it merited withdrawal of the reference, For the same reasons, the Court withdraws the reference in each case in order to address this issue.[2]

 Fourth, each of the defendants argues that the Supreme Court's decision in *Stern v. Marshall,* ── U.S. ──, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), prevents the bankruptcy court from finally resolving fraudulent transfer actions because resolution of such actions requires an exercise of the "judicial Power" reserved for Article III courts. For substantially the reasons stated in *Flinn,* the Court withdraws the reference in each case in order to address this issue.[3]

 Next, Avellino argues that the Trustee cannot bring avoidance actions under SIPA because that statute permits him to do so only "[w]henever customer property is not sufficient to pay in full the claims." 15 U.S.C. § 78fff-2(c)(3). The Court considered this issue in *Flinn,* and found that its resolution did not require substantial and material consideration of non-bankruptcy law. For the same reasons, the Court declines to withdraw the reference in *Avellino* to address this issue.

Avellino further argues that the Court should withdraw the reference to determine whether the Trustee has standing to bring fraudulent transfer claims. While the Trustee had initially brought common law claims against Avellino, the parties, in light of the Court's holding in *Picard v. HSBC Bank PLC,* thereafter stipulated to the dismissal of those claims. *See* Stipulation and Order dated September 19, 2011. This stipulation mooted any issues related to the common law claims in Avellino's motion to withdraw the reference. Nonetheless, Avellino maintains that his challenge to the Trustee's standing applied not only to the common law claims, but also to the Trustee's avoidance claims.

 "It is well settled that a bankruptcy trustee has no standing generally to

---

2. In connection with his arguments regarding antecedent debt, Greenberger notes that the Trustee apparently seeks to avoid transfers that occurred beyond the relevant limitations periods. *See* 11 U.S.C. § 548(a)(1) (two years); N.Y. C.P.L.R. § 213 (six years). Indeed, the Trustee's complaint includes a claim against Greenberger for recovery of "all" fraudulent transfers under N.Y. C.P.L.R. §§ 203(g) & 213(8), each of which provides that, for claims such as fraud, the statute of limitations begins to run only after a plaintiff, with reasonable diligence, could have discovered certain critical facts. Nonetheless, the issue of whether the Trustee may invoke N.Y. C.P.L.R. §§ 203(g) & 213(8) to extend the relevant limitations period is separate and distinct from the issue of whether he may avoid transfers that purportedly satisfied antecedent debts, and thus the Trustee and SIPC did not address this separate issue in their opposition briefs. The Court finds that Greenberger has not properly presented this issue and declines to address it.

3. The Elins Family Trust defendants do not argue that the question raised by *Stern* requires mandatory withdrawal, but instead that, under *In re Orion Pictures Corp.,* 4 F.3d 1095 (2d Cir.1993), the Court should withdraw the reference for cause. Under *Orion,* a court deciding whether to withdraw for cause should consider "questions of efficient use of judicial resources, delay and costs to the parties, [and] uniformity of bankruptcy administration." 4 F.3d at 1101. Because what powers the bankruptcy court has to adjudicate fraudulent transfer claims ineluctably affects considerations such as how to efficiently use judicial resources and whether bankruptcy courts can uniformly administer the relevant laws, the Court follows its approach from *Flinn* and withdraws the reference to consider the question of the bankruptcy court's power. Once the Court has resolved the issue of the bankruptcy court's power to adjudicate fraudulent transfer claims, *it* will address the arguments put forth by the Elins Family Trust defendants concerning withdrawal for cause.

sue third parties on behalf of the estate's creditors, but may only assert claims held by the bankrupt corporation itself." *Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir.1991). While the Trustee's avoidance claims are "held by the bankrupt corporation itself" under the relevant provisions of the Bankruptcy Code, *see, e.g.*, 11 U.S.C. § 548 ("The trustee may avoid any transfer . . . ."), Avellino argues that mere invocation of a bankruptcy statute alone does not suffice to create standing under *Wagoner*. *Cf. In re Stanwich Financial Services Corp.*, 2011 WL 1331926, at *2 (Bankr.D.Conn.2011) ("Moreover, Second Circuit *Wagoner* jurisprudence does not forestall, *per se*, the application of the rule simply because a bankruptcy trustee (or another representative of the bankruptcy estate) has invoked a statute to bring a claim."). The court in *Stanwich*, however, found a lack of standing only because the plaintiff sought to portray a claim brought on behalf of creditors as a fraudulent transfer claim. *Id.* ("The plaintiff's deletion of the phrase 'aiding-and-abetting' is a mere cosmetic change and does not alter the fact that the plaintiff continues to assert its fraudulent transfer action against Bear Stearns and Hinckley Allen (and others) on the basis that . . . they participated in the alleged scheme to defraud the debtor's creditors."). In other words, the Court found that the plaintiff could not invoke the statute as a pretext, not that the plaintiff would lack standing to bring an avoidance claim on behalf of the estate. Simply put, Avellino has cited no case holding that a Trustee lacks standing to bring an avoidance claim on behalf of an estate. Nor has Avellino identified any persuasive reason why a court might reach that conclusion. *See In re Housecraft Indus. USA, Inc.*, 310 F.3d 64, 71 (2d Cir.2002) (noting that a challenge to standing would be "meritless because §§ 548 and 549 both expressly provide that the 'trustee may avoid' the fraudulent transactions described in each provision"). In the absence of such reasons, the Court concludes that resolution of this issue will require no more than simple application of existing precedent and thus does not warrant withdrawal.

For the foregoing reasons, the Court withdraws the reference of these cases to the bankruptcy court for the limited purposes of deciding: (i) whether SIPA and other securities laws alter the standard the Trustee must meet in order to show that a defendant did not receive transfers in "good faith" under 11 U.S.C. § 548(c); (ii) whether the Trustee may, consistent with non-bankruptcy law, avoid transfers that Madoff Securities purportedly made in order to satisfy antecedent debts; (iii) whether, in light of this Court's decision in *Picard v. Katz*, 11 U.S.C. § 546(e) applies, limiting the Trustee's ability to avoid transfers; (iv) whether, after the United States Supreme Court's recent decision in *Stern v. Marshall*, — U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), final resolution of claims to avoid transfers as fraudulent requires an exercise of "judicial Power," preventing the bankruptcy court from finally resolving such claims; and (v) whether, if the bankruptcy court cannot finally resolve the fraudulent transfer claims in this case, it has the authority to render findings of fact and conclusions of law before final resolution. In all other respects, the motions to withdraw are denied.

The parties should convene a separate conference call for each case no later than March 5, 2011 to schedule further proceedings. The Clerk of the Court is hereby ordered to close document number 1 on the docket of each case.

SO ORDERED.