## In re LENDERS ABSTRACT AND SETTLEMENT SERVICE INC., Debtor.

**Kenneth P. Silverman, Esq., the Chapter 7 Trustee for the Estate of Lender's Abstract and Settlement Service Inc., Plaintiff,**

v.

**Tudor Insurance Company, Defendant.**

No. 10–MC–699 (ADS).

United States District Court, E.D. New York.

April 12, 2013.

Silverman, Perlstein & Acampora, LLP, By: Robert J. Ansell, Esq., Of Counsel, Jericho, NY, for the Plaintiff.

Kaufman Borgeest & Ryan LLP, By: Robert Aaron Benjamin, Esq., Sergio Alves, Esq., Of Counsel, Valhalla, NY, for Defendant.

SPATT, District Judge.

On July 8, 2009, the Debtor, Lenders Abstract and Settlement Service Inc. ("Lenders"), filed a voluntary petition for Chapter 7 bankruptcy in the United States Bankruptcy Court in the Eastern District of New York before the Honorable Dorothy T. Eisenberg. On July 23, 2010, the Plaintiff Kenneth P. Silverman, Esq., the Chapter 7 Trustee for Lenders ("the Trustee"), filed an adversary proceeding against the Defendant Tudor Insurance Company ("Tudor"), alleging breach of contract. On October 15, 2010, Tudor moved this Court to withdraw the adversary proceeding from the bankruptcy court to this Court. For the reasons below, Tudor's motion is granted.

## I. BACKGROUND

### A. The Policy

Lenders was a corporation that provided settlement services for residential loan closings. As part of its ordinary business practices, Lenders obtained a Specialty Professional Liability Policy from Tudor ("The Policy"), which provided Lenders with insurance coverage with regard to its professional services. The Policy was effective from September 2, 2008 through September 2, 2009. However, by letter dated February 27, 2009, the underwriters at Tudor notified Lenders that the Policy was no longer in effect as of February 26, 2009. (Kandel Decl., Exh. B.)

Under the terms of the Policy, Tudor provided coverage for "all sums in excess of the deductible that the Insured shall become legally obligated to pay as damages because of claims first made against the Insured and reported to [Tudor] during the policy period." (Kandel Decl., Exh. A.) The Policy "applie[d] to actual or alleged negligent acts, errors or omissions arising solely out of professional services

rendered for others as designated by Item 3 of the Declarations[.]" (Kandel Decl., Exh. A.) Lenders, the Trustee and Lenders's principal, Scott Sisskind ("Sisskind"), were considered Insureds under the Policy. Item 3 of the Declarations, "Profession," was amended by Endorsement # 6, "Escrow Agents Endorsement" ("Endorsement # 6"), to include "Escrow Agent, Closing Agent, Notary Public, and/or Witness Closer." (Kandel Decl., Exh. A.)

However, the Policy contained several exclusions. These exclusions included losses arising from (1) "[t]he liability of others assumed by the Insured under any contract or agreement whether written unless specifically endorsed to th[e] [P]olicy" (Exclusion C); (2) "[b]ankruptcy or insolvency of the Insured" (Exclusion E); (3) "[t]he Insured's Services and/or capacity as[ ] . . . a partner, principal, officer, director or trustee of a business enterprise not named in the Declarations" (Exclusion N); (4) "[a]ny claim made by any Insured against any other Insured" (Exclusion S); and (5) "[c]laims arising out of expenses, warranties or guarantees by the Insured" (Exclusion T). (Kandel Decl., Exh. A.) These exclusions also included losses in connection with or arising from the following:

[a]ctions against the Insured arising out of or connected with the performance or failure to perform services for any person or entity:

1. which is owned by, controlled by or in which any Insured has any financial interest;

2. which owns, controls, or has any financial interest in any Insured covered by this policy;

3. which is affiliated with any Insured through any common ownership, control, or financial interest; or

4. in which any Insured is a director, officer, partner manager, or principal stockholder (Exclusion G).

(Kandel Decl., Exh. A.) In addition, Endorsement # 6, in relevant part, excluded coverage for loss in connection with or arising out of "[a]ny actual or alleged commingling of funds" (Exclusion 6) and "[a]ny persons or entity's financial inability to pay, insolvency, receivership, bankruptcy, liquidation or dishonoring of any financial instrument" (Exclusion 11). (Kandel Decl., Exh. A.)

## B. The Firstrust Action

Lenders conducted closings of residential mortgage loans for 1st Republic Mortgage Brokers ("1st Republic"), a business that originated, serviced, and sold mortgage loans to investors. (Kandel Decl., Exh. H.) Sisskind was 1st Republic's President and sole shareholder. (Kandel Decl., Exh. H.)

On or about April 18, 2008, Firstrust Bank ("Firstrust"), a bank and trust company, entered into an agreement ("the Warehousing Agreement") with 1st Republic. (Kandel Decl., Exh. H.) Pursuant to the Warehousing Agreement, Firstrust loaned $10,000,000 ("the Firstrust loan") to 1st Republic to fund residential mortgage loans to individuals. (Kandel Decl., Exh. H.) 1st Republic agreed to pay Firstrust the lesser of $10,000,000 or the outstanding principal balance under a promissory note executed by Firstrust in connection with the Warehousing Agreement. (Kandel Decl., Exh. H.) Also on or about April 18, 2008, Sisskind entered into a "Limited Guaranty and Suretyship Agreement" with Firstrust, in which Sisskind personally guaranteed the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owed by 1st Republic to Firstrust. (Kandel Decl., Exh. H.) Thereafter, on or about August 28, 2008, 1st Republic executed an

amended and restated promissory note, under which 1st Republic agreed to pay to the order of Firstrust the lesser of $12,500,000 or the outstanding principal balance pursuant to the terms of the Warehousing Agreement. (Kandel Decl., Exh. H.)

Under the terms of the Warehousing Agreement, as collateral for the Firstrust loan, 1st Republic agreed to deliver and assign to Firstrust the original mortgage notes that were subsequently funded by the Firstrust loan. (Kandel Decl., Exh. H.) Once the residential mortgage loans were closed, 1st Republic would sell them to permanent investors. (Kandel Decl., Exh. H.) The permanent investors would then pay Firstrust for amounts advanced with respect to residential mortgage loans. (Kandel Decl., Exh. H.)

Lenders conducted the closings of residential mortgage loans that had been originated, serviced or sold by 1st Republic and funded by the Firstrust loan. (Kandel Decl., Exh. H.) In accordance with 1st Republic's instructions, Firstrust wired money directly to Lenders for these closings. (Kandel Decl., Exh. H.)

However, as a result of alleged negligence on the part of Lenders and 1st Republic, proceeds from collateral pledged to Firstrust was incorrectly paid out to a third party. (Kandel Decl., Exh. H.) Consequently, Firstrust claimed a loss of more than $5,000,000. (Kandel Decl., Exh. H.) On January 14, 2009, Firstrust filed a praecipe seeking the entry of a money judgment by confession against 1st Republic for over $5,000,000 in the United States District Court for the Eastern District of Pennsylvania. (Kandel Decl., Exh. F.) On January 16, 2009, Firstrust filed an action against 1st Republic in the Eastern District of New York ("the Firstrust Action"). (See Dkt. No. 09–CV–177.) On January 20, 2009, a money judgment resulting from the January 14, 2009 praecipe was entered against 1st Republic for $5,495,977, plus interest, costs and attorneys' fees. (Kandel Decl., Exh. H.)

On February 20, 2009, Firstrust filed an amended complaint in the Firstrust Action, adding Lenders as a defendant. The amended complaint also requested enforcement of the $5,495,977 judgment entered against 1st Republic on January 20, 2009 by the United States District Court of the Eastern District of Pennsylvania. In addition, the amended complaint set forth causes of action as follows: (1) fraudulent conveyance against all defendants; (2) fraud against all defendants; (3) negligent misrepresentation against all defendants; (4) conversion against all defendants; (5) unjust enrichment against all defendants; and (6) negligence against Lenders. (Kandel Dec., Exh. H.) Thereafter, on July 8, 2009, Lenders filed a voluntary petition for a Chapter 7 bankruptcy under Title 11 in the United States Bankruptcy Court of the Eastern District of New York ("the Bankruptcy Proceeding").

## C. Lenders's Request for Coverage Under the Policy

On January 30, 2009, Firstrust advised Tudor by letter that Firstrust was making a claim against Lenders. (Kandel Decl., Exh. C.) Firstrust alleged that Lenders and its employees committed negligent errors and omissions which resulted in payment to third parties of the proceeds of collateral pledged to Firstrust, totaling $4,965,744. (Kandel Decl., Exh. C.) On February 4, 2009, Tudor informed Firstrust by letter that it needed to investigate the matter and requested additional information from Firstrust. (Kandel Decl., Exh. D.) On February 26, 2009, Firstrust complied with Tudor's request for additional information. (Kandel Decl., Exh. E.)

By letter dated March 25, 2009, Tudor preliminary denied coverage to Lenders for the Firstrust Action. In reaching this determination, Tudor relied on Policy exclusions N and G, as well as exclusions 6 and 11 under the Policy's Endorsement # 6. (Kandel Decl., Exh. I.) On April 6, 2009, Tudor sent a letter to Lenders reaffirming its declination of coverage. (Kandel Decl., Exh. J.)

Thereafter, on October 28, 2009, the Trustee sent a letter to Tudor alleging that the Lenders's officers and directors "committed or engaged in negligent acts, errors or omissions to the detriment of [Lenders]" which resulted in at least $2,000,000 in damages to Lenders. (Kandel Decl., Exh. K.) On November 24, 2009, Tudor responded to the Trustee's letter and again denied coverage. (Kandel Decl. Exh. L.)

### D. Procedural History of the Bankruptcy Proceeding and the Adversary Proceeding

On July 23, 2010, the Trustee for Lenders filed an adversary proceeding against Tudor in the Bankruptcy Proceeding ("the Adversary Proceeding"). (Kandel Decl., Exh. M.) Tudor is not a creditor in the Bankruptcy Proceeding. The Trustee's Complaint seeks a declaration of insurance coverage under the Policy, which was issued to Lenders by Tudor prior to the commencement of the Bankruptcy Proceeding. (Kandel Decl., Exh. M.) In this regard, the Trustee seeks insurance coverage for Lenders's liability in the Firstrust Action. The Complaint also asserts a breach of contract claim and seeks $2,000,000 in damages as a result of Tudor's alleged breach of the Policy. (Kandel Decl., Exh. M.)

On August 26, 2010, Tudor filed an answer, alleging that its denial of Lenders' insurance coverage for the lawsuit filed by Firstrust, presently a creditor in the Bankruptcy Proceeding, was proper. (Kandel Decl., Exh. N.) Tudor also demanded a jury trial. (Kandel Decl., Exh. N.)

On October 15, 2010, Tudor filed a motion in this Court to withdraw the Adversary Proceeding from the bankruptcy court. On November 12, 2010, the Trustee filed an opposition to the withdrawal request, to which Tudor replied on November 29, 2010. After the filing of the present motions, the Adversary Proceeding at issue against Tudor has been continually adjourned by the bankruptcy court and a pre-trial conference has yet to take place.

## II. DISCUSSION

### A. Legal Standard

Under 28 U.S.C. § 1334(a), the district courts are given original and exclusive jurisdiction of all cases under Title 11 of the United States Code, which concerns bankruptcy proceedings. Conversely, 28 U.S.C. § 1334(b) provides that when a civil proceeding arises under Title 11, or arises in or relates to a case under Title 11, "the district court[ ] shall have original but not exclusive jurisdiction." Pursuant to 28 U.S.C. § 157(a), a district court has the discretion to refer to the bankruptcy court "any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11...."

In this regard, the Eastern District of New York has a Standing Order of Referral dated August 28, 1986 ("the 1986 Order"), which automatically refers to the Bankruptcy Court of the Eastern District of New York all cases in the Eastern District arising under, or related to, a Title 11 bankruptcy case. However, recently, on December 5, 2012, a new Standing Order of Referral was issued in this District ("the 2012 Order"). The 2012 Order con-

tinues the 1986 Order, but also provides as follows:

> [I]f a bankruptcy judge or district judge determines that a bankruptcy judge cannot enter a final order or judgment consistent with Article III of the United States Constitution in a particular proceeding referred under this order and designated as core under section 157(b) of [T]itle 28, unless the district court orders otherwise, the bankruptcy judge shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court[.] ... [F]urther ... the district court may treat any order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution.

28 U.S.C. § 157(d) allows for withdrawal of the reference of matters from the bankruptcy court to the district court in two circumstances. First, "[t]he district court may withdraw in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). This is considered a permissive withdrawal. Second, "[t]he district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both [T]itle 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *Id.* This is considered a mandatory withdrawal.

■ In this case, the Adversary Proceeding at issue is not subject to mandatory withdrawal because its resolution will clearly not hinge on "substantial and material consideration of non-Bankruptcy Code federal statutes." *In re Ionosphere Clubs,* *Inc.,* 922 F.2d 984, 995 (2d Cir.1990). Therefore, the Court will only consider whether permissive withdrawal is appropriate here. In this regard, the Court notes that district courts have "broad discretion to withdraw the reference for cause." *In re Enron Corp.,* 295 B.R. 21, 25 (S.D.N.Y.2003) (internal citations omitted); *see also In re Apponline.Com.,* 303 B.R. 723, 726 (E.D.N.Y.2004).

■■ "In determining whether a party has shown 'cause,' courts consider factors including 'whether the claim or proceeding is core or non-core, whether it is legal or equitable, and considerations of efficiency, prevention of forum shopping, and uniformity in the administration of bankruptcy law.'" *Murphy v. County of Chemung (In re Murphy),* 482 Fed.Appx. 624, 628 (2d Cir.2012) (quoting *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2d Cir.1993)). These factors are often referred to by others courts in this circuit as the *"Orion factors"* due to the Second Circuit's holding in *In re Orion Pictures Corp.,* 4 F.3d at 1101. The Court will now consider and review each of the *Orion* factors.

## B. Whether The Adversary Proceeding is Core or Non–Core

The first factor that courts should consider when determining whether a party has shown cause to allow for withdrawal of the reference is whether a proceeding is core or non-core. The distinction between a core proceeding and a non-core proceeding first arose in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (hereinafter *"Marathon"*). In a plurality opinion, the Supreme Court held that a claim alleging breach of a pre-petition contract brought against a party that had not filed a proof of claim and was not otherwise related to the bankruptcy proceeding involved a state-created right

that must be adjudicated by an Article III judge. *See also Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 459 (2d Cir.2008) ("In *Marathon*, the plurality opinion held that a non-Article III bankruptcy judge could not adjudicate a pre-petition contract dispute arising under state law against a party that had not filed a proof of claim and was not otherwise related to the bankruptcy proceedings."). "In response to the Court's decision, Congress enacted 28 U.S.C. § 157, authorizing district courts to refer 'any or all cases under [T]itle 11 and any or all proceedings arising under [T]itle 11 or arising in or related to a case under [T]itle 11' to bankruptcy judges under subsection (a), and defining the reach of the bankruptcy court's power under subsections (b) and (c)." *Bankruptcy Servs.*, 529 F.3d at 460; *see also Connolly v. Bidermann Indus. U.S.A.*, 95 Civ. 1791(RPP), 1996 WL 325575, at *2, 1996 U.S. Dist. LEXIS 8059, at *5–6 (S.D.N.Y.1996) ("The Bankruptcy Amendments and Federal Judgeship Act of 1984 ... was enacted in response to the Supreme Court's decision in [*Marathon*,]" and "allows the federal courts to refer bankruptcy cases automatically to the bankruptcy judges for the district, 28 U.S.C. § 157(a), but provides that in some situations the reference can be withdrawn.")

Under § 157(b)(1), a proceeding is considered "core" if it "arise[s] in a bankruptcy case or under Title 11. The detailed list of core proceedings in § 157(b)(2) provides courts with ready examples of such matters." *Stern v. Marshall*, —— U.S. ——, 131 S.Ct. 2594, 2605, 180 L.Ed.2d 475 (2011) (citing *Marathon*, 458 U.S. 50 71, 102 S.Ct. 2858, 73 L.Ed.2d 598). The list, which is non-exhaustive, includes "matters concerning the administration of the [bankruptcy] estate"; "counterclaims by the [bankruptcy] estate against persons filing claims against the [bankruptcy] es-

tate"; and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims[.]" 28 U.S.C. § 157(b)(2). Conversely, under § 157(c)(1), non-core proceedings are those that are related to the bankruptcy case but do not arise under Title 11 and are typically based on common law. *Stern*, 131 S.Ct. at 2605.

Of importance, the bankruptcy court's authority to enter a final order depends in part on whether the issue or claim at hand is deemed a "core proceeding." 28 U.S.C. § 157. Under § 157(b)(1), bankruptcy courts "may hear and determine" all cases considered core proceedings. In contrast, while a bankruptcy court "may hear a proceeding that is not a core proceeding," it may only "submit proposed findings of fact and conclusions of law to the district court," which must review the bankruptcy court's findings before entering a final order or judgment. 28 U.S.C. § 157(c)(1).

█ However, recently, in *Stern v. Marshall*, the Supreme Court called into question the constitutionality of § 157(b) with respect to the statute's grant of authority to bankruptcy judges to enter final judgments in all core proceedings. In this regard, the *Stern* Court ruled that "a bankruptcy court does not have the constitutional authority to issue a final judgment on claims not necessarily determined as part of the process of allowing or disallowing proofs of claim." *Picard v. Estate of Madoff*, 464 B.R. 578, 585 (S.D.N.Y.2011) (citing *Stern*, 131 S.Ct. at 2618). Thus, "[t]he [b]ankruptcy [c]ourt is constitutionally barred from finally adjudicating a claim, notwithstanding its designation as core, if '(1) the counterclaim would not be resolved by adjudication of the creditor's proof of claim; (2) the counterclaim was

"not completely dependent upon adjudication of a claim created by federal law"; and (3) the creditor "did not truly consent" to resolution in bankruptcy court.'" *In re Arbco Capital Management, LLP,* 479 B.R. 254, 261 (S.D.N.Y.2012) (citing *Stern,* 131 S.Ct. at 2608, 2614, 2617; *Adelphia Recovery Trust v. FLP Group, Inc.,* 11 Civ. 6847(PAC), 2012 WL 264180, at *2, 2012 U.S. Dist. LEXIS 10804, at *6 (S.D.N.Y. Jan. 30, 2012)).

■ However, if the parties consent, if the claim involves public rights or if the claim will be resolved by ruling on the proof of claim, the bankruptcy court will have constitutional authority over the claim. *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP,* 462 B.R. 457, 467 (S.D.N.Y.2011) ("[A]fter *Stern,* th[e] power [of the [b]ankruptcy [c]ourt to enter final adjudications] depends, not on whether the matters are core or non-core, but on whether the rights being adjudicated (1) are public rights, or (2) will necessarily be resolved in ruling on a creditor's proof of claim—or, of course, on the parties unanimously consenting to bankruptcy court adjudication.") (hereinafter "Akin Gump").

Nevertheless, the Second Circuit has emphasized that the Supreme Court's holding in *Stern* is "a narrow one." *In re Quigley Co., Inc.,* 676 F.3d 45, 52 (2d Cir.2012) (citing *Stern,* 131 S.Ct. at 2620 (holding that "[w]e conclude today that Congress, in one isolated respect, exceeded [Article III's] limitation in the Bankruptcy Act of 1984")); *see also In re Salander O'Reilly Galleries,* 453 B.R. 106, 115 (Bankr.S.D.N.Y.2011) ("*Stern* is replete with language emphasizing that the ruling should be limited to the unique circumstances of that case."). Furthermore, with respect to motions to withdraw the reference, district courts within this Circuit have deciphered the effect of *Stern* in varying ways. *Dynegy Danskammer, L.L.C. v. Peabody COALTRADE Int'l Ltd.,* 905 F.Supp.2d 526, 529 (S.D.N.Y. 2012).

One approach replaces the previously most significant *Orion* factor—whether the adversary proceeding at issue is core or non-core—with consideration of "whether the bankruptcy court has constitutional authority to finally adjudicate the matter under [the three part test in] *Stern.*" *Id.* at 528 (citing *Penson Financial Services, Inc. v. O'Connell,* 479 B.R. 254, 262 (S.D.N.Y.2012); *Weisfelner v. Blavatnik,* 467 B.R. 712, 719 (S.D.N.Y.2012); *In re Levine,* 11 Civ. 9101(PAE), Chapter 7, Case No. 00–15511(SCC), Adv. Pro. 02–3492(SCC), 2012 WL 310944, at *2–3, 2012 U.S. Dist. LEXIS 12292, at *7–8 (S.D.N.Y. Feb. 1, 2012); *Akin Gump,* 462 B.R. at 471–72; *Picard v. Avellino,* 469 B.R. 408, 413 n. 3 (S.D.N.Y.2012)). A second method simply adds the *Stern* three-step approach to the *Orion* factors as a separate inquiry. *Id.* at 528 (citing *Adelphia Recovery Trust v. FLP Group, Inc.,* 11 Civ. 6847(PAC), 2012 WL 264180, at *2–3, 2012 U.S. Dist. LEXIS 10804, at *7 (S.D.N.Y. Jan. 30, 2012); *In re Madison Bentley Assocs., LLC,* 474 B.R. 430, 435 (S.D.N.Y. 2012)). Lastly, a third approach essentially ignores the implications of *Stern* and leaves the *Orion* factors unadulterated. *Id.* (citing *Extended Stay, Inc. v. Blackstone Grp.,* 466 B.R. 188, 204 (S.D.N.Y. 2011); *Dev. Specialists, Inc. v. Peabody Energy Corp. (In re Coudert Bros. LLP),* 11 Civ. 4949(PAE), 2011 WL 7678683, at *2–4, 2011 U.S. Dist. LEXIS 135990, at *7–9 (S.D.N.Y. Nov. 23, 2011) (hereinafter "*Coudert Bros.*")); *see also DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co.,* 464 B.R. 587, 594 (S.D.N.Y.2012).

■ However, this Court need not resolve the best way to apply *Stern* to the

motion to withdraw the reference, because the Adversary Proceeding at issue here is a non-core proceeding. While, as discussed above, "core proceedings are not statutorily defined," district courts have found that "[a] proceeding that involves rights created by bankruptcy law, or that could arise only in a bankruptcy case, [to be] a core proceeding." *DeWitt Rehab. & Nursing Ctr., Inc. v. Columbia Cas. Co.*, 464 B.R. 587, 591 (S.D.N.Y.2012) (citing *MBNA America Bank, N.A. v. Hill*, 436 F.3d 104, 108–109 (2d Cir.2006); *McCrory Corp. v. 99¢ Only Stores (In re McCrory Corp.)*, 160 B.R. 502, 506 (S.D.N.Y.1993)). On the other hand, "[a] claim is noncore if it 'does not depend on bankruptcy laws for its existence and ... could proceed in a court that lacks federal bankruptcy jurisdiction.'" *Id.* (citing *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc.*, 00–CV–4302 (SHS), 2000 WL 1514614, at *1, 2000 U.S. Dist. LEXIS 15084, at *2 (S.D.N.Y. Oct. 10, 2000)).

■ In this case, the Adversary Proceeding concerns a dispute over coverage under an insurance contract that was entered into prior to Lenders filing its bankruptcy petition. The Trustee seeks coverage from Tudor on behalf of Lenders for Lenders's liability in the Firstrust Action. Therefore, rather than relying on bankruptcy laws for its existence, the claim is a state common law contract claim that could proceed in a court without federal bankruptcy jurisdiction. As such, the Court finds that the Adversary Proceeding at issue is a non-core matter.

■■ Moreover, of importance, the Second Circuit has held that a "breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is noncore." *Orion*, 4 F.3d at 1102. In reaching this holding, the Second Circuit emphasized that while "[a]ny contract action that the debtor would pursue against a defendant presumably would be expected to inure to the benefit of the debtor estate and thus 'concerns' its administration," such an action nevertheless "remains a pre-petition contract action that the Supreme Court held in *Marathon* may not be finally adjudicated by a non-Article III judge." *Id.* Indeed, "while the debtor's rights under its insurance policies are property of a debtor's estate, the contract claims are not rendered core simply because they involve property of the estate.... A general rule that such proceedings are core because they involve property of the estate would create an exception to *Marathon* that would swallow the rule." *United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir.1999) (citation and internal quotation marks and alterations omitted). Furthermore, "a dispute arising from a pre-petition contract will usually not be rendered core simply because the cause of action could only arise post-petition." *Id.* at 638.

Particularly instructive in this case is the district court's decision in *DeWitt Rehabilitation and Nursing Center, Inc. v. Columbia Cas. Co.*, 464 B.R. at 587. In *DeWitt*, a negligence action was filed against the debtor, a rehabilitation and nursing center, in New York County Supreme Court. *Id.* at 589. The negligence action involved the alleged fall of a resident/patient at the debtor's nursing home. *Id.* However, since the debtor had filed for Chapter 11 bankruptcy, the negligence action was stayed. *Id.* Thereafter, the debtor "initiated an adversary proceeding in the bankruptcy court against its past liability carrier [ ], its present liability carrier [ ], and the successor of its insurance agent at the time of the fall." *Id.* The debtor sought a "declaratory judgment as to who

should indemnify [the debtor] from the [negligence action]." *Id.*

The district court in *DeWitt* was not persuaded by the debtor's attempts to characterize its cause of action as a core proceeding. In this regard, the district court held:

> The parties' dispute is a non-core matter. [The debtor's] assertion that the adjudication is directly related to the claim of a creditor . . . is irrelevant to this determination. This case does not involve the question of whether the [plaintiff in the negligence action] has a valid claim against [the debtor]; that will be determined in the [negligence] action, presently stayed. This case determines who bears financial responsibility for any potential award arising from the [negligence] action. This requires a straightforward analysis of [the debtor's] contracts with [its past liability carrier, its present liability carrier and the successor of its insurance agent at the time of the subject fall], and basic factfinding as to the timing and adequacy of various claim notices. Such inquiries and analyses are not recited in section 157(b)(2), involve rights that exist independent of [the debtor's] bankruptcy, and could easily have arisen outside of a bankruptcy court.
>
> The Court is not persuaded by [the debtor's] attempts to cast this action as inherently related to the bankruptcy proceeding. While it is true that . . . the declaratory judgment action is brought in the context of [a d]ebtor attempting to secure a valuable asset (specifically the coverage of the [liability] Policy), this does not make it a bankruptcy-related action.

*Id.* at 590–91 (citation and internal quotation marks omitted).

This Court finds that the reasoning of the court in *DeWitt* to be applicable here.

As in *DeWitt,* the Trustee, on behalf of Lenders, is seeking indemnification from Tudor for Lenders's liability stemming from the Firstrust Action. Although the Trustee argues that "the proceeding is . . . core because the Trustee is seeking a determination that the policy is property of the estate," (Trustee Opp., pg. 7), the dispute nevertheless concerns a "straightforward analysis" of the Policy and "basic factfinding" as to whether coverage is provided under the Policy for the Firstrust Action, *DeWitt,* 464 B.R. at 591. As discussed above, the Supreme Court has held, and the Second Circuit has recognized, that such a contract claim cannot be finally adjudicated by a bankruptcy judge under Article III of the Constitution. Therefore, the Court finds that the contract dispute at the center of the Adversary Proceeding makes this a non-core matter.

 However, "[w]hile the non-core nature of [the Trustee's] claims weighs in favor of withdrawing the reference from the bankruptcy court, the core/non-core determination does not end the inquiry. As the Second Circuit directed in *Orion,* 'once a district court makes the core/non-core determination, it should weigh questions of efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors.'" *DeWitt,* 464 B.R. at 591 (citing *Orion,* 4 F.3d at 1101). Therefore, the Court now considers these additional factors.

### C. Tudor's Demand for a Jury Trial and the Nature of the Trustee's Claims

In its Answer, Tudor demands a jury trial. Thus, Tudor argues that the Court should grant its motion to withdraw the reference. In this regard, Tudor contends that its right to a jury trial will be im-

pinged if the matter remains before the bankruptcy court. The Court agrees.

■ "The Seventh Amendment protects the right to a jury trial only for matters at law, 'in contradistinction' to those in equity." *Bankruptcy Servs. v. Ernst & Young (In re CBI Holding Co.)*, 529 F.3d 432, 465 (2d Cir.2008) (quoting *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)). Thus, in the context of a motion to withdraw, "*Orion* [ ] directs lower courts to consider whether the proceeding may involve a jury trial, which cannot be conducted by a non-Article III court without consent of the parties." *Dynegy*, 905 F.Supp.2d at 534 n. 3. "[A] district court might find that the inability of the bankruptcy court to hold the trial constitutes cause to withdraw the reference." *Orion*, 4 F.3d at 1101–02.

■ When determining whether a party has a right to a jury trial, courts "are required to analyze the underlying nature of the claim without regard to Congress' designation of that claim as core." *Id.* (quoting *Ben Cooper, Inc. v. Ins. Co. of the State of Pa. (In re Ben Cooper, Inc.)*, 896 F.2d 1394, 1401 (2d Cir.1990), *vacated and remanded on other grounds*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated at* 924 F.2d 36 (2d Cir.1991)). As the Second Circuit has guided, this analysis requires a two-step approach: "First, [courts] ask whether the action would have been deemed legal or equitable in 18th century England. Second, [courts] examine the remedy sought and determine whether it is legal or equitable in nature." *Id.* at 466 (quoting *Pereira v. Farace*, 413 F.3d 330, 337 (2d Cir.2005)).

■ However, in this case, this Court has already deemed the Adversary Proceeding to be a non-core matter. Of importance,

all bankruptcy rulings in non-core matters are reviewable by a district court. As a result, a jury verdict in a bankruptcy trial would be subject to review by the district court, which in turn would violate the Reexamination Clause of the Seventh Amendment. Thus, the Constitution prohibits bankruptcy courts from holding jury trials in non-core matters. It follows that a finding that a claim is non-core and that a jury demand has been filed may create cause for withdrawing the reference.

*Coudert Bros.*, 2011 WL 7678683 at *5–6, 2011 U.S. Dist. LEXIS at *15–16 (citations and internal quotation marks omitted). Therefore, since the Court has found that the Trustee's breach of contract claim against Tudor is a non-core matter and Tudor requests a jury trial, cause exists to withdraw the reference in this case.

In addition, the Court notes that the breach of contract claim, "at a minimum, is clearly legal, as opposed to equitable, in nature." *Id.* Here, the Trustee is essentially seeking monetary damages on behalf of Lenders, in that he seeks coverage for Lenders under the Policy for Lenders's liability in the Firstrust Action. Indeed, in the Complaint, the Trustee seeks "damages in an amount to be determined at trial, but in no event less than $2,000,000." (Kandel Decl., Exh. M.) Where a claim for breach of contract seeks monetary damages, such a claim "is a legal, rather than an equitable, claim." *N. Am. Energy Conservation, Inc. v. Interstate Energy Res., Inc. (In re N. Am. Energy Conservation, Inc.)*, 00 Civ. 4302(SHS), 2000 WL 1514614, at *2, 2000 U.S. Dist. LEXIS 15084, at *7 (S.D.N.Y. Oct. 10, 2000) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821, 825 (2d Cir.1994)). Moreover, although the Trustee also seeks declarato-

ry judgment, the Supreme Court has held "[t]he fact that [an] action is in form a declaratory judgment case should not obscure the essentially legal nature of the action." *Orion*, 4 F.3d at 1103 (quoting *Simler v. Conner*, 372 U.S. 221, 223, 83 S.Ct. 609, 9 L.Ed.2d 691 (1963) (per curiam)).

Accordingly, the Court finds that Tudor is entitled to a jury trial in this Adversary Proceeding, which is an adequate ground for this Court to grant Tudor's motion to withdraw the reference.

### D. The Remaining Factors

In light of the Court's rulings that this is a non-core matter that requires a jury trial, the Court finds that the remaining *Orion* factors also weigh in favor of withdrawing the reference in this case. As discussed above, "in evaluating cause," district courts should consider "efficiency, prevention of forum shopping and uniformity in the administration of bankruptcy law." *Orion*, 4 F.3d at 1101. Here, if the motion to withdraw the reference is not granted, this Court will still be required to review de novo any findings made by the bankruptcy court regarding the Adversary Proceeding. As a result, the Court finds that judicial resources will be better served if this Court grants Tudor's motion to withdraw the reference and oversees the entire litigation of this matter. *See DeWitt*, 464 B.R. at 593 ("Such duplicate reviews of the contracts and facts are costly and time-consuming, and unnecessarily expend judicial resources."); *Coudert Bros.*, 2011 WL 7678683 at *6, 2011 U.S. Dist. LEXIS at *18 ("Because this case involves non-core claims, it will, almost unavoidably, reach this Court at some point.").

Furthermore, the Court finds that the resolution of this matter does not require familiarity with the Bankruptcy Proceeding or bankruptcy law. Rather, the breach of contract claim involves issues of state contract and insurance law wholly separate from Lenders's Bankruptcy Proceeding. *See DeWitt*, 464 B.R. at 593 ("Regarding uniformity of bankruptcy administration ... [r]esolution of the present action will at best increase [the debtor's] assets, and at worst declare them unchanged, but in any event is unlikely to affect other creditor claims, as the contractual and factual issues are unique to [the fall at issue in the negligence action]."); *Coudert Bros.*, 2011 WL 7678683 at *6–7, 2011 U.S. Dist. LEXIS at *18–19 (finding (1) that while the bankruptcy judge was "deeply familiar with the facts of [the debtor's] bankruptcy proceedings," the adversary proceeding was *"sui generis,"* or unique in its characteristics, because, among other things, "it will turn, significantly if not entirely, on the interpretation of a single contract ..." and (2) since "the claims ... do not raise substantive issues of bankruptcy law[,] [m]aintaining the reference is ... not necessary to promote the uniform application of the law").

In addition, of importance, as of December 13, 2012, the subject Adversary Proceeding still remains in its very early stages, as the bankruptcy judge "has continued all proceedings in the Adversary Proceeding pending [this Court's] ruling on Tudor's Motion to Withdraw the Reference." (Def. 12/13/12 Letter.) Therefore, the bankruptcy court has not already expended judicial resources with respect to the Trustee's breach of contract claim. Lastly, the Court notes that the issue of forum shopping is not present in this case. *Coudert Bros.*, 2011 WL 7678683 at *6–7, 2011 U.S. Dist. LEXIS at *19 ("[T]here is no evidence that [the defendant's motion to withdraw the reference] is an attempt to engage in forum shopping. Quite the contrary: [the defendant] has a right to a jury trial on at least the contract claim, and,

absent consent by [the defendant] to a trial in [b]ankruptcy [c]ourt, the parties would have no choice but to try this case in this Court. Indeed, given that the claims at issue are all non-core, this case involves a non-core proceeding that could have and probably should have been brought in a district court originally.") (citations and internal quotation marks omitted).

Accordingly, for the reasons set forth above, the Court grants Tudor's motion to withdraw the reference.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that Tudor's motion to withdraw the reference from the bankruptcy court to this Court is granted, and it is further

**ORDERED,** that the Clerk of Court is directed to assign a civil action number and assign a magistrate judge to handle all discovery proceedings, and it is further

**ORDERED,** that the Clerk of Court is directed to docket all previously filed docket entries in Case No. 10–MC–699 onto the civil docket.

**SO ORDERED.**